CARE AND PROTECTION OF THOMASINA
(and a companion case[1]).

No. 08-P-1919.

Middlesex. March 11, 2009. - October 27, 2009.

Present: DUFFLY, KAFKER, & GRAINGER, JJ.

*Moot Question. Statute,* Construction. *Adoption,* Care and protection, Dispensing with parent's consent. *Parent and Child,* Care and protection of minor. *Practice, Civil,* Appointment of guardian. *Evidence,* Child custody proceeding. *Minor,* Care and protection, Adoption, Visitation rights.

This court concluded that an appeal by parents from a decision of a Juvenile Court judge, determining that two children were in need of care and protection and committing them to the permanent custody of the Department of Children and Families, was not moot, despite the subsequent allowance of guardianship petitions appointing the foster parents of the children as their permanent guardians, where, because the care and protection case did not result in a termination of parental rights, the parents retained residual rights. [566-574]

In a care and protection proceeding regarding two children, the Juvenile Court judge's subsidiary findings regarding both parents' current failings, which had ample support in the record and were not clearly erroneous, clearly and convincingly established the judge's ultimate findings as to the parents' unfitness [574-576]; further, the judge acted consistently with one child's best interests in reducing the number of visits between the father and that child (but not terminating visitation), and in leaving any increased visitation to the discretion of the child's guardians [576-577]; finally, the judge acted in that child's best interests in placing her, together with her sibling, with her foster parents, rather than placing her separately with a paternal relative [577-578].

PETITIONS filed in the Middlesex County Division of the Juvenile Court Department on September 14, 2006.

The cases were heard by *Margaret S. Fearey,* J.

*Brad P. Bennion* for the mother.

*Patrick J. Roache, Jr.,* for the father.

[1] Care and Protection of Neil. The children's names are pseudonyms.

*Brian R. Pariser* for Department of Children and Families.

*Peter M. Gately*, for the children, submitted a brief.

DUFFLY, J. A judge of the Juvenile Court adjudicated Thomasina and Neil to be in need of care and protection and committed them to the permanent custody of the Department of Children and Families (department), pursuant to G. L. c. 119, § 26, as in effect prior to St. 2008, c. 176, § 84, and St. 2008, c. 215, § 64D.[2] The biological mother of Thomasina and Neil, and Thomasina's biological father, appeal from that adjudication, both claiming that the judge's ultimate findings are not supported by the evidence and that parental unfitness was not clearly and convincingly established.[3] The father additionally claims that the adjudication regarding visitation and placement do not adequately consider Thomasina's best interests.

Following final adjudication in the underlying care and protection action, separate guardianship petitions were filed by Thomasina's and Neil's foster parents. The trial judge — who also had presided over the care and protection proceeding — allowed the guardianship petitions and appointed the foster parents permanent guardians of the children pursuant to G. L. c. 201, §§ 2 and 5, as in effect prior to St. 2008, c. 521, § 21.[4]

The department moved to dismiss the within appeal, arguing that, upon entry of a final judgment on the guardianship petition, the children were no longer in the department's care and custody and any appeal from the care and protection judgment was thus moot. For reasons we shall discuss, we do not agree that the appeal is moot. Proceeding to the merits, we affirm the adjudication placing the children in the department's permanent custody; we will remand for entry of orders as to visits with the children consistent with the judge's findings.

1. *Procedural background.* As reflected on the dockets, in September, 2006, the department filed its petitions and thereafter,

---

[2]Subsequent changes to the statute do not affect our analysis.

[3]Our references to "the mother" are to the biological mother of Thomasina and Neil. As found by the trial judge, Neil's biological father is deceased; our references to "the father" are to Thomasina's biological father.

[4]Section 21 of Chapter 521 of the Acts and Resolves of 2008 repealed G. L. c. 201, effective as of July 1, 2009; it has been replaced by G. L. c. 190B. See St. 2008, c. 521, §§ 9 & 44.

pursuant to G. L. c. 119, § 26, sought permanent custody of the children. The department is authorized under that statute to seek an adjudication "that the child is in need of care and protection. . . . If the child is adjudged to be in need of care and protection, the court may commit the child to the custody of the department until he becomes 18 years of age or until, in the opinion of the department, the object of his commitment has been accomplished, whichever occurs first . . . ."

It will be significant to the department's claim of mootness that, despite its notice of intent to do so, the department apparently did not, as authorized by G. L. c. 119, § 26(4), seek to "dispense with parental consent to adoption, custody, guardianship or other disposition of the child." Because the department did not seek the dispensation of parental consent, the judge made no order in that regard, nor did she make findings addressing the standards set forth in G. L. c. 210, § 3, as would have been required for termination of parental rights.

Following four days of evidentiary hearings that commenced in early October, 2007, and concluded in November, 2007, the department was awarded permanent custody of Thomasina, age eleven at the time of trial, and Neil, then seven years old. The judge's written findings and "Adjudication, Commitment and Order" issued on August 31, 2008, nunc pro tunc to January 3, 2008. The judge found that "no professional believes that termination of parental rights is in the Children's best interests." The judge then determined that, in light of the foregoing, "in addition to approving the goal of guardianship with the [foster parents] for both [Thomasina] and [Neil], the Court will order visitation at least four times a year, with pictures and letters to be exchanged in addition. Visits should be supervised for both parents unless the guardians deem unsupervised visits to be in the Children's best interests." Additional visits would be permitted at the discretion of the guardians and consistent with the children's best interests. The trial judge concluded:

> "[N]either [m]other nor [father] are currently able to assume parental responsibility for the Children, or either of them; . . . [m]other and [father] are likely to remain unable to parent the Children for the indefinite future; . . . [and] the best interests of the Children are served by granting

the Department permanent custody pursuant to G. L. c. 119, § 26, with the goal of placing them in the guardianship of the [foster parents]."[5]

The father and mother filed timely notices of appeal.

As reflected in the supplemental appendix filed by the department, before the appeal entered on the docket of this court, the trial judge allowed petitions for guardianship under authority of G. L. c. 201, §§ 2 and 5, and appointed the foster parents as permanent guardians of the children.[6] It was represented to us during oral argument that a trial had been conducted in connection with the guardianship petition and that the parents have appealed from the judgment. No appeal has been docketed in this court, and the matter is not before us.

2. *Discussion.* (a) *Mootness.* We first address the department's motion seeking dismissal on the ground of mootness, which is premised on the department's argument that "allowance of the guardianship petition effectively superseded the care and protection judgment" and that, as a consequence, it "is no longer the custodian of the children, and with the appointment of permanent

---

[5] As set forth in the findings, the children had been placed with the foster parents at various points throughout their lives leading up to these proceedings.

[6] In her conclusions supporting the care and protection adjudication and the goal of placing the children in the guardianship of the foster parents, the judge relied on G. L. c. 201, § 1, as amended by St. 1992, c. 379, § 58, which provided:

> "The district or juvenile court may, when it appears necessary or convenient, appoint guardians of minors if the person who is the subject of the petition is a minor and there is a proceeding before such district or juvenile court."

As noted above, see note 4, *supra*, G. L. c. 201 has since been repealed and guardianship laws are now codified at G. L. c. 190B. These changes do not substantially alter the Probate and Family Court's jurisdiction over guardianship matters, or the limited circumstances in which the Juvenile Court has concurrent jurisdiction. The newly enacted statute provides:

> "The district or juvenile court may appoint guardians of minors if the person who is the subject of the petition is a minor and there is a proceeding before such district or juvenile court and shall have continuing jurisdiction over resignation, removal, reporting, and other proceedings related to the guardianship."

G. L. c. 190B, § 5-201, inserted by St. 2008, c. 521, § 9. See St. 2008, c. 521, § 44.

guardians they are no longer in need of care and protection." The department further argues that the within appeal will serve no purpose as "even a reversal of the final judgment" in the care and protection action "cannot alter the final judgment of the guardianship petition." The parents' sole recourse, according to the department, is to appeal from the entry of the guardianship decrees or to seek revocation of the guardianships.

Our discussion is guided by the principle that "where two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *FMR Corp.* v. *Commissioner of Rev.*, 441 Mass. 810, 819 (2004), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). We begin by summarizing the statutory authority and obligations that repose in the department when a child has been committed to its care by a final adjudication under G. L. c. 119, § 26, and the residual rights that remain with parents whose rights have not been terminated under c. 119, § 26(4),[7] and G. L. c. 210, § 3.

Where a child has been adjudicated to be in need of care and protection under c. 119, § 26, but parental rights have not been terminated, as here, the child is committed to the department's custody "until he becomes 18 years of age or until, in the opinion of the department, the object of his commitment has been accomplished." The object of the child's commitment, and the department's obligation while the child is committed to its care,

---

[7]Under G. L. c. 119, § 26(4), a judge may

"dispense with the need for consent of any person named in section 2 of chapter 210, to the adoption, custody, guardianship or other disposition of the child named therein, upon a finding that the child is in need of care and protection pursuant to this section and that the best interests of the child will be served by such an order. In determining whether such an order should be made, the standards set forth in section 3 of said chapter 210 concerning an order to dispense with the need for consent to adoption of a child shall be applied. If the child who is the subject of the petition is under the age of 12, and if the court adjudicates the child to be in need of care and protection in accordance with this section, the court shall enter an order dispensing with the need for consent to adoption upon finding that the best interests of the child, as defined in paragraph (c) of said section 3 of said chapter 210, will be served thereby. The entry of such an order shall have the effect of terminating the rights of a person named therein to receive notice of or to consent to any legal proceeding affecting the custody, guardianship, adoption or other disposition of the child named therein."

is to keep the child safe from "serious risk of peril from abuse, neglect, or other activity harmful to the child," at the hands of a parent or guardian.[8] *Care & Protection of Bruce*, 44 Mass. App. Ct. 758, 761 (1998).

As defined in G. L. c. 119, §§ 21 and 23(*a*)(3), as appearing in St. 2008, c. 176, § 83,[9] custody of a child gives to the department certain powers, including the power to "determine the child's place of abode, medical care and education." The department is generally charged with placing children in its care or custody "in private families" unless the child's best interests require placement in a public or private institution for "special care, treatment or education of children." G. L. c. 119, § 32, as appearing in St. 1954, c. 397, § 4. It is responsible for ongoing visitation between parent and child. G. L. c. 119, § 35. The department also plays a role in both grandparent and sibling visitation. See G. L. c. 119, § 26B, inserted by St. 2008, c. 176, § 84.[10]

Chapter 119, § 26, as in effect prior to St. 2008, c. 176, § 84, and St. 2008, c. 215, § 64D,[11] gives to the Juvenile Court broad authority to make appropriate orders for the care of the child. In addition to committing the child to the department's permanent custody, the court also may make "any other appropriate order with reference to the care and custody of the child as may be in his best interest including, but not limited to, any one or more of the following:"—

"(1) It may permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations which the court may prescribe including supervision as directed by the court for the care and protection of the child.

---

[8]Except as set forth in c. 119, § 26(4), see note 7, *supra*, and G. L. c. 119, § 29B, see note 17, *infra*, references to "guardian" or "legal guardian" in c. 119 refer to the child's parent or "present guardian." Cf. *Care & Protection of Manuel*, 428 Mass. 527, 529 (1998). General Laws c. 119, § 24, for example, describes the procedure to commit a child to custody upon the filing of a petition that alleges that a child "lacks proper attention of the parent, guardian with care and custody or custodian."

[9]The language is identical in the prior versions of the statutes.

[10]Prior to the insertion of G. L. c. 119, § 26B, grandparent visitation was codified at G. L. c. 119, §§ 23 C and 26(5), and sibling visitation was codified at c. 119, § 26(5).

[11]See note 2, *supra*.

"(2) It may, subject to such conditions and limitations as it may prescribe, transfer temporary legal custody to any of the following: —

"(i) any individual who, after study by a probation officer or other person or agency designated by the court, is found by the court to be qualified to give care to the child;

"(ii) any agency, or other private organization licensed or otherwise authorized by law to receive and provide care for the child;

"(iii) the department of [children and families].

"(3) It may order appropriate physical care including medical or dental care."

As noted earlier, the court may also — but did not do so here — "enter an order to dispense with the need for consent . . . to the adoption, custody, guardianship or other disposition of the child . . . , upon a finding that the child is need of care and protection pursuant to [c. 119, § 26,] and that the best interests of the child[, as defined by c. 210, § 3,] will be served by such an order." See note 7, *supra*. This same provision goes on to state that the department need not seek to "dispense with parental consent to the adoption, custody, guardianship or other disposition of the child if the child is being cared for by a relative or . . . [if there exists a compelling reason that such action] would not be in the best interests of the child." G. L. c. 119, § 26(4).

After a child is placed in the department's "permanent" custody under c. 119, § 26, parents retain a number of residual rights. " 'Unless the [parents'] legal relation to [their] children is terminated, [they] would be entitled to receive notice of all proceedings affecting the welfare of the children, to petition every six months 'for review and redetermination' of their current needs, and to participate in an annual permanency planning hearing. G. L. c. 119, §§ 26, 29B.' *Adoption of Willow*, 433 Mass. 636, 647 n.11 (2001)." *Adoption of Gillian*, 63 Mass. App. Ct. 398, 403 n.5 (2005). Compare *Adoption of Helen*, 429 Mass. 856, 861 (1999) ("[G. L. c. 210, § 3,] explicitly states that 'any person against whom a decree to dispense with consent to adoption has

been entered . . . shall not have such right of petition for review
and redetermination' "). In addition to these rights, a parent has
the right to visit the child; the right to legal representation at each
stage of the proceedings, see G. L. c. 119, § 29, as appearing in
St. 2008, c. 176, § 85[12]; *Care & Protection of Stephen*, 401 Mass.
144, 148-149 (1987), and the right to receive services from the
department. See Ireland, Juvenile Law § 3.6, at 45-47 (2006 &
Supp. 2008).

Significant among the residual rights is the right to seek
periodic review and redetermination of the child's commitment
every six months. "A review and redetermination proceeding is
a readjudication of the custody order under G. L. c. 119, § 26[,
wherein] . . . the judge is deciding . . . whether to maintain
the separation of parent from child." *Care & Protection of Erin*,
443 Mass. 567, 571 (2005). "This provision is, 'primarily, the
means by which a parent or other interested party, including the
department, may bring to a judge's attention a change in the
situation of a child, or of a child's parent, which might warrant
reconsideration or modification of the original order adjudicat-
ing the child in need of care and protection.' " *Adoption of
Helen*, 429 Mass. at 861, quoting from *Care & Protection of
Isaac*, 419 Mass. 602, 611-612 (1995). The parent has the burden
to go forward with credible evidence of such a change, but "the
department bears the ultimate burden to prove that the child is
still in need of care and protection." *Care & Protection of Erin*,
*supra* at 572. It does so by establishing that the parent is still
unfit and that it remains in the child's best interests to be removed
from the parent's custody. "[T]he department must meet this
burden by clear and convincing evidence." *Ibid.*

Only if parental rights are terminated does a parent lose the
right to seek review and redetermination. In comparison, the
guardianship statute, G. L. c. 190B, § 5-212, inserted by St.
2008, c. 521, § 9, appears to place on the petitioner seeking
revocation of the guardianship the burden of proving that revoca-

---

[12]Under G. L. c. 119, § 29, parents have a right to counsel "in any other
proceeding regarding child custody where the department of social services or
a licensed child placement agency is a party, including such proceedings
under sections five and fourteen of chapter two hundred and one." *Matter of
Hilary*, 450 Mass. 491, 498 (2008). The language has not changed since the
repeal of G. L. c. 201 in July of 2009. See St. 2008, c. 521, §§ 21 & 44.

tion "would be in the best interest of the [child]."[13,14] Nor is there a specific statute that provides for appointment of counsel, unless the department is a party to the proceedings. G. L. c. 119, § 29.[15] See note 12, *supra*.

Were we to accept the department's argument that the care and custody of a child is no longer governed by G. L. c. 119, but is superseded by a subsequent guardianship adjudication, then all of a parent's residual rights under c. 119 disappear upon appointment of a permanent guardian. This view is inconsistent with the statutory scheme governing care and protection of children who have been committed to the department's care, but whose parents' rights have not been terminated.

We expressed similar views in *Adoption of Gillian*, 63 Mass. App. Ct. 398, 399 (2005). In that case, it was not the department but the parents who argued that entry of a permanent guardianship under separate petition resolved the pending care and protection proceeding as to their daughter. The department had filed care and protection petitions regarding the parties' three children and sought to terminate parental rights for two of the children. Temporary custody of them was awarded to the department, but

---

[13]Under the prior statute, G. L. c. 201, § 5, as amended by St. 1998, c. 194, § 199, the petitioner also had to prove "a substantial and material change of circumstances."

[14]We note that no decisional law has interpreted this aspect of the prior statute. Cf. *Andrews, petitioner*, 449 Mass. 587, 595 (2007) (court determined that "[a] person who seeks relief under a [civil] statute bears the burden of proving that his case falls within its terms," especially where a statute already protects due process rights). Cf. also Mehne, Massachusetts Guardianship and Conservatorship Practice § 8.7, at 8-30 (Mass. Cont. Legal Educ. 2008) ("If the parent had been found unfit in the original guardianship proceedings, the burden probably would be on the parent to prove new or changed circumstances amounting to fitness for that parent to recover custody. See *Custody of a Minor (No. 1)*, 13 Mass. App. Ct. 66, 69 n.8 [1982]"); Cross, Fleischner, & Elder, Guardianship and Conservatorship in Massachusetts § 9.08 (2d ed. 1999), quoting from G. L. c. 201, § 5 ("The appointment of a guardian of a minor may also be revoked 'if the party petitioning for revocation proves a substantial and material change of circumstances and if the revocation is in the child's best interest' ").

[15]It does not appear from the docket that the department was a named party in the guardianship action. The docket further reflects that, prior to appeal, no attorney entered an appearance on behalf of the parents in the guardianship proceeding. This appears to be consistent with the department's view, as expressed in 110 Code Mass. Regs. § 7.301 (2008), that department-sponsored guardianships are only appropriate where parental rights are terminated.

the case had not been finally adjudicated when Gillian's paternal aunt filed a guardianship petition pursuant to G. L. c. 201, § 1. The court awarded temporary custody to the aunt "under the supervision of the department." *Adoption of Gillian,* 63 Mass. App. Ct. at 401. Following a joint trial on the care and protection petitions and the guardianship petition, the judge appointed the aunt permanent guardian of Gillian. It was, however, "unclear whether there was a final judgment as to custody in the care and protection case at that point." *Ibid.* In subsequently issued written findings and conclusions of law, the judge found the parents unfit, terminated their parental rights with respect to Gillian (and, at a later point, also with respect to one sibling), and committed Gillian to the custody of the department.

Gillian's parents argued that the appointment of a permanent guardian for Gillian "brought the care and protection petition to conclusion," and "rendered the care and protection issues moot." *Id.* at 405. The parents argued in that case that the department was required to re-institute a care and protection proceeding in order to regain jurisdiction over Gillian.

Addressing in that case whether the department was required to refile a care and protection petition — and concluding that it was not — we discussed the statutory scheme, and our observations on that score are relevant to the case at hand. We rejected the parents' claim "that the judge's appointment of a permanent guardianship under a separate petition was, in effect, a resolution of the care and protection petition. The appointment of the aunt . . . as Gillian's permanent guardian was the final judgment relative to the guardianship petition. However, that action did not dictate that the care and protection case be dismissed." *Ibid.* The care and protection petition in *Gillian* had not been finally resolved when the aunt was appointed permanent guardian. We noted that the statutory framework "permits the judge to issue more than one dispositional order, in addition to or instead of granting custody to the department, including allowing the child to remain in the custody of the guardian and terminating parental rights." *Ibid.* "[T]ermination need not be a prerequisite to a permanency plan." *Ibid.,* quoting from *Adoption of Nancy,* 443 Mass. 512, 518 (2005).[16]

---

[16]Compare *Custody of a Minor,* 389 Mass. 755, 761 (1983) (where department no longer wants to proceed with care and protection, "the petition

A guardian for a child committed to the department's care may be appointed in conjunction with the department's permanency plan on behalf of the child. That process is governed by G. L. c. 119, § 29B, as amended by St. 2008, c. 176, § 86, which provides for, among other options, referral of a child "for legal guardianship.[17] When parental rights are terminated and a guardianship ensues, all legal relations between the parent and child end. *Adoption of Nancy*, 443 Mass. at 515. *Adoption of Gillian*, 63 Mass. App. Ct. at 404. See G. L. c. 119, § 26(4).[18] In the context of a care and protection case that does not result in the termination of parental rights, even if the plan is for a guardianship, the parents retain residual rights as set forth above. Cf.

should have been dismissed and the judge's order should have been vacated. The issue whether [the proposed guardian] or the mother should have custody of the child would then have been appropriately litigated in the Probate and Family Court as a result of a guardianship petition pursuant to G. L. c. 201, § 5"). In that case, the court noted that the proposed guardian's "allegations, as substitute petitioner, that the child was without care and protection, were inconsistent with her claim that she was providing the care that the child needed." *Id.* at 762.

[17]Section 29B of c. 119, as amended by St. 2008, c. 176, § 8, currently provides:

> "Except as provided herein, within 12 months of the original commitment, grant of custody, or transfer of responsibility of a child to the department by a court of competent jurisdiction, and not less than every 12 months thereafter while the child remains in the care of the department, the committing court shall conduct a permanency hearing, in accordance with rules established by the chief justice for administration and management, to determine and periodically review thereafter the permanency plan for the child. The plan shall address whether and, if applicable, when: (1) the child will be returned to the parent; (2) the child will be placed for adoption and the steps the department will take to free the child for adoption; (3) the child will be referred for legal guardianship; (4) the child will be placed in permanent care with relatives; or (5) the child will be placed in another permanent planned living arrangement."

Section 29C of c. 119, as appearing in St. 2008, c. 176, § 87, requires a court of competent jurisdiction to certify "that the continuation of the child in his home is contrary to his best interests" and to determine at least annually, subject to enumerated exceptions, whether the department "has made reasonable efforts" to return the child safely to his parent.

[18]General Laws c. 190B, § 5-206(*b*)(3), inserted by St. 2008, c. 521, § 9, makes it explicit that a parent whose rights have been terminated is not entitled to notice of any petition for guardianship.

*Adoption of Nancy, supra* at 516.[19] Therefore, the appointment of the foster parents as guardians for the children does not remove the matter from the purview of c. 119 in this case. The appeal is not moot, and we deny the department's motion to dismiss it.[20]

(b) *Parental unfitness.* We turn now to the parents' claim that the judge's findings as to unfitness are not supported by clear and convincing evidence. No claim is made that any subsidiary finding is without a basis in the evidence.

The parents met in 1995 at a treatment center. Thomasina was born a year later, in October of 1996, after which the couple and Thomasina lived with the father's parents for two years, and then lived in their own apartment for a period before separating. In 2000, the mother married Neil's father, who is now deceased. Prior to, and during, trial, the children had been placed with the same foster parents "all three times they ha[d] been in foster care." When the children first came into foster care in 2001, "[Thomasina] tended to act like a mother to [Neil], although [the foster mother], by her own clear parenting of [Neil], was able to get [Thomasina] to give up that role over a six-month period." The children were returned to the mother; in 2003, when they were again placed in foster care, Neil was "wild and out-of-control" and "[Thomasina] was once again acting as his mother, attempting to direct and nurture him."

The judge found that the mother failed to monitor the children,[21] to seek prompt medical attention for the children's injuries,

[19]If placement with an identified guardian is the department's goal, the guardianship proceeding should be consolidated with the care and protection proceeding (thus eliminating the burden on parents to litigate unfitness in two separate actions). Based on our decision today, where a separate petition is filed by proposed guardians who are not family members, as here, the department must be made a party to the proceeding.

[20]Our decision disposes of the department's argument that the parents' recourse is to seek to revoke the guardianship; they retain the right to review and redetermination, and the court's determination in that proceeding will control. It also disposes of the department's claim that to the extent that the trial judge can be said to have ordered visitation in the care and custody proceeding, the order was superseded by allowance of the guardianship petition.

[21]In 2003, "[Neil] had absconded from the apartment while Mother was sleeping and was outside unsupervised for approximately four hours." In 2006, the mother's landlord found Neil outside the building covered with blood, with injuries "consistent with a fall from 7 to 10 feet." His injuries included fractures to the bones outside his right eye, several rib fractures on his right side, a hole in his lung, and bruises to his back.

to address Neil's special needs, and to act appropriately with the social worker and the children during visitation.[22] Despite receiving substantial in-home support from the department, the mother failed to acquire and learn basic skills required for proper parenting. The mother's inability to supervise and provide appropriate parenting for the children resulted in serious physical injuries to Neil (as recently as one year prior to trial), as well as injuries to Thomasina.[23]

Both the mother and the father have a history of substance abuse. The father had difficulty finding work that fit in with his drug treatment schedule; his life was unstable, and he failed to attend parenting classes. He has an adult criminal record[24] and was the subject of numerous restraining orders requested by the mother as well as by his own parents, in 1993, 1994, 1995, 2000, 2001, 2004, and most recently in 2005. The father has never acted as Thomasina's caretaker, and his mother "acknowledge[d] that he would not be able to care for Thomasina by himself." The father sought to regain custody only of Thomasina, but his lack of parenting skills rendered him unfit to provide appropriate parenting for her.

At the time of trial, Neil and Thomasina were doing well with the foster parents, though Neil "still require[d] constant supervision when he [was] not sleeping." The judge found that "it is not in either [Thomasina's] or [Neil's] best interest to be separated

[22]During the mother's visits, she argued aggressively with the social worker in front of the children, and her argumentative behavior extended to her interactions with the children. The judge found, "While this behavior is understandable, albeit lamentable, and certainly not in itself a reason to deprive one of custody of one's children; it does illustrate Mother's inability to work with professionals to face her considerable parenting challenges and her inability to control her reactions in the best interest of her Children."

[23]Although the judge found that the mother generally brought the children to the doctor for their annual physical exams, she often delayed bringing them for treatment of injuries, such as Neil's nose fracture, allegedly caused by being hit by a swing, or Thomasina's "facial injuries[,] including a 'bump on the forehead and bruising to both eyes and the nose,' apparently as a result of having been hit by [Neil] with a bat."

[24]His adult record includes guilty findings for disorderly conduct (2004), operating after suspension (2003, 2004), conspiracy to violate the Controlled Substances Act (2001), operating under the influence (1994, 1998), Abuse Prevention Act violations (two incidents in 1995), and assault and battery (1995).

for placement." See *Care & Protection of Three Minors*, 392 Mass. 704, 715 (1984) ("[t]he courts of this Commonwealth have recognized the importance of siblings being raised together").

The judge's findings regarding both parents' current failings have ample support in the record and are not clearly erroneous. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993). Together, the findings clearly and convincingly establish parental unfitness. See, e.g., *Adoption of Mary*, 414 Mass. 705, 710-711 (1993); *Adoption of Quentin*, 424 Mass. 882, 886 (1997). "Parental unfitness . . . means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent. Rather, the idea of 'parental unfitness' means 'grievous shortcomings or handicaps' that put the child's welfare 'much at hazard.' " *Care & Protection of Amalie*, 69 Mass. App. Ct. 813, 817 (2007), quoting from *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28 (1997). "The specialized needs of a particular child when combined with the deficiencies of a parent's character, temperament, capacity, or conduct may clearly establish parental unfitness." *Id.* at 818, quoting from *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 120, 125 (1984). In addition, "[t]o the extent it bears on fitness, . . . evidence of prior convictions may properly be weighed in the balance." *Care & Protection of Frank*, 409 Mass. 492, 495 (1991). A parent's failure to participate in services offered or recommended by the department may properly be considered, along with other evidence such as lack of parenting skills, as probative of current parental unfitness. See *Custody of a Minor (No. 1)*, 377 Mass. 876, 883 (1979); *Care & Protection of Inga*, 36 Mass. App. Ct. 660, 665, 667 (1994).

(c) *Visitation.* "The same standard of clear and convincing evidence controls the decision to terminate a parent's visitation rights as it does the decisions concerning parental unfitness in both care and protection and adoption proceedings." *Care & Protection of Ian*, 46 Mass. App. Ct. 615, 620 (1999). "When the department obtains custody of a child, it also has the power to control visits to the child. G. L. c. 119, § 21. That power is modified, however, by G. L. c. 119, § 35, as appearing in St. 1954, c. 646, § 1, which gives the parents the right to visit their

children if 'the welfare of the child and the public interest will not be injured.' " *Custody of a Minor (No. 2)*, 392 Mass. 719, 725-726 (1984).

With respect to visitation, the judge found: "[Thomasina] knows . . . her father; and termination of the bond would not be in her best interest." The judge then concluded:

> "[T]he Court will order visitation at least four times a year, with pictures and letters to be exchanged in addition. Visits should be supervised for both parents unless the guardians deem unsupervised visits to be in the Children's best interests. Needless to say, additional contact would be permitted in the discretion of the guardians, based upon the Children's individual best interests."

The father claims on appeal that the evidence at trial "overwhelmingly proved" that Thomasina enjoyed and benefited from her twice monthly unsupervised visits with him and paternal relatives, and that the judge's decision to reduce visits was not in her best interests. The judge's reducing the number of visits between the father and Thomasina to four times a year, but not terminating visits, and leaving any increased visitation to the discretion of the guardians, was consistent with Thomasina's best interests. The judge did not abuse her discretion in ordering a minimum of four visits a year.

(d) *Thomasina's placement.* The father claims that the judge failed fully to consider whether Thomasina's best interests would be served by nominating either paternal relative as her guardian. Assuming that the judge was required to consider the father's plan to place Thomasina with his paternal relatives, the judge was in any event not required to give artificial weight to those nominations. See *Adoption of Hugo*, 428 Mass. 219, 226 (1998), cert. denied sub nom. *Hugo P. v. George P.*, 526 U.S. 1034 (1999) (plan proposed by parent not entitled to any artificial weight in determining best interests of child). Nothing in the record suggests that the judge gave the department's plan for guardianship with the foster parents presumptive or artificial weight.

In rejecting the father's proposed placement of Thomasina with her paternal aunt or paternal grandmother, the judge considered the alternatives and provided specific reasons for decid-

ing that the father's proposed placement was not in Thomasina's best interests. See *Adoption of Hugo, supra* at 225-228. The child had been living with her foster parents for an extended period of time, was doing well, had bonded with them, and would be able to remain with her half-brother. By contrast, the father "wanted [Thomasina] to live with him and his parents, but he would not be able to provide a home for Neil, so the Children would be separated." As with the proposed placement with the paternal grandmother, the father's suggested placement with the paternal aunt required that Thomasina and her brother be separated. The judge concluded that the "[c]hildren must remain together and that they need stability and structure." The findings support placement of the children together with the foster parents. Cf. G. L. c. 119, § 23(*c*), inserted by St. 2008, c. 176, § 83 ("The department shall also seek to identify any minor sibling or half-sibling of the child and attempt to place these children in the same foster family if, in the judgment of the department, that placement would be in the best interests of the children").

3. *Conclusion.* The decree committing the children to the permanent custody of the department is affirmed. We remand for entry of orders as to parental visits with the children consistent with the judge's findings.

*So ordered.*