After trial, a Juvenile Court judge found the mother unfit to parent the child, terminated her parental rights, and approved the plan of the Department of Children and Families (department) for adoption by the child's paternal grandmother and her husband.[3] See G. L. c. 210, § 3. On appeal, the mother claims that the trial judge erred in terminating her parental rights without clear and convincing evidence of current unfitness. In addition, she claims that the judge erred in declining to order postadoption visitation. We conclude there were no such errors and therefore affirm.
1. Background. The child was born in July, 2013, and tested positive for marijuana at that time. Due to drug withdrawal symptoms, the child was transferred to the special care nursery (SCN). In August, 2013, when the child was nine days old, the department filed an emergency care and protection petition and was granted temporary custody. The next day, the department determined that allegations of neglect by the mother were supported, see G. L. c. 119, § 51B, and opened the case for services.[4] Initially, the mother was allowed daily unsupervised visits with the child at the hospital. At the end of August, 2013, after hospital staff reported concerns about the mother's behavior toward the child and the SCN nurses, the department changed the mother's visitation to weekly supervised visits.
The child remained in the hospital until September, 2013, at which point she was placed in a foster home. In January, 2014, when the child was approximately six months old, she was placed with her paternal grandmother and the grandmother's husband, who are now her preadoptive parents. In August, 2014, the mother stipulated that the child was in need of care and protection and the department obtained permanent custody of the child. Both before and after this stipulation, the mother failed to consistently engage in services to address her mental health and substance abuse issues. Her visits with the child were sporadic due to those and other issues, including homelessness and incarceration. She had a dozen psychiatric hospitalizations after the child's birth and was incarcerated at least three separate times. In November, 2015, the department filed a petition for review and redetermination, indicating its intent to seek decrees terminating parental rights.
By the time of trial in January, 2017, the child was three and one-half years old. She had been living with her paternal grandmother and the grandmother's husband for the past three years. The mother had been incarcerated for the past year, had been released shortly before trial, and had not seen the child for four months. The mother did not appear for trial.
2. Discussion. To terminate parental rights and to dispense with parental consent to adoption of a child, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests. See Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). The judge's decision will remain undisturbed unless "the findings of fact are clearly erroneous or ... there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
"Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, 459 Mass. at 60. A "faint hope" that the parent will become fit at some point in the future, without more, will not defeat a finding of continuing unfitness. Id. at 59-60. In making this decision, the judge may properly take into account "prognostic evidence derived from an ongoing pattern of parental neglect or misconduct." Custody of a Minor (No. 1), 377 Mass. 876, 883 (1979).
a. Parental unfitness. The mother argues that the evidence of unfitness was not clear and convincing because the bulk of it was stale, and evidence that was more current was meager and vague.[5] She contends that the bulk of the judge's findings relate to the first three months of the child's life and that very few findings relate to the time period after she stipulated to unfitness. It is true that the focus of a review and redetermination hearing is on new developments that have occurred since the prior judgment; however, the judge does not start with a blank slate. See Care & Protection of Thomasina, 75 Mass. App. Ct. 563, 570 (2009). Here, the judge properly considered evidence going back to the child's initial placement with the department for its prognostic value. This evidence showed that the mother had long-standing and serious issues with substance abuse, mental health, and criminal involvement which directly interfered with her ability to parent the child. Yet, she refused help that was offered to her and otherwise failed to take steps to remedy these issues.
To the extent that the more current evidence of the mother's fitness was less than comprehensive, it was still sufficient to establish that the mother's condition had not improved.[6] See Adoption of Don, 435 Mass. 158, 165 n.10 (2001) (evidence of "ongoing patterns of parental neglect or misconduct, especially 'where unrebutted by more recent proof of parental capacity, [can] provide[ ] a satisfactory basis for a finding of current unfitness' " [quoting from Custody of a Minor (No. 1), 377 Mass. at 883 ] ). Additionally, the judge was warranted in drawing a negative inference from the mother's failure to appear at trial. See Custody of Two Minors, 396 Mass. 610, 616 (1986). There was no abuse of discretion in the judge's determination that the mother was unfit.
b. Postadoption visitation. The mother also claims that the judge abused her discretion in declining to order postadoption visitation where there was evidence that the adoptive mother was hostile toward the mother.
A trial judge has the equitable authority to order visitation between a child and a parent whose parental rights have been terminated, "where such visitation is in the child's best interest." Adoption of Ilona, 459 Mass. at 63. Here, the judge found that "there is no evidence that further visits between [the mother and the child] would cause harm to [the child] and they may be in her best interests." She nonetheless declined to order postadoption visitation, leaving any such visitation up to the discretion of the adoptive parent. She was not required to order visitation. Rather, even if a judge determines that postadoption visitation is in the best interests of the child, the judge "must balance the benefit to the child of an order of visitation that will provide assurance that the child will be able to maintain contact with the biological parent, with the intrusion that an order imposes on the rights of the adoptive parents, who are entitled to the presumption that they will act in their child's best interest."[7] Id. at 64-65.
Here, the judge stated that postadoption visitation may be in the best interests of the child, but she made no finding that there was an existing significant bond between the child and the mother, who had never lived together. See Adoption of Vito, 431 Mass. 550, 563 (2000) (primary consideration in determining best interests is whether there is significant existing bond between child and biological parent). On the other hand, the judge did find that the child had lived with the preadoptive parents for three years, that the child had developed a strong nurturing bond with them, and that the child was thriving in their care. See ibid. (where child had strong bond with adoptive family and little evidence of bond with biological parent, order of postadoptive contact was unwarranted). The judge did not abuse her discretion in declining to order postadoption visitation.
Decree affirmed.

The child's father stipulated to his unfitness and entered into an open adoption agreement at the time of trial. Accordingly, he is not a party to this appeal.

The allegations were supported on the basis of substance abuse, possible domestic violence between the mother and father, the mother's refusal to engage in therapy to address her mental health issues, and the mother's refusal to accept offers of shelter placements and assistance to help her retain custody of the child.

The mother also challenges the validity of two specific findings. She disputes finding 39, that she was discharged from a halfway house prior to trial, as unsupported by the evidence. She disputes finding 83, that she relapsed in 2015 and was hospitalized after being found unconscious, as a reference to stricken material. As neither finding was "critical to the overall conclusion of parental unfitness," any error in this regard does not warrant reversal. Adoption of Helen, 429 Mass. 856, 860 n.7 (1999).

The mother contends that only seventeen of the judge's 103 factual findings concern the more recent time period, after the August, 2014, stipulation of unfitness. Among those seventeen findings are that, in May, 2015, the mother advised her social worker that she was hospitalized after attempting suicide by jumping off the Merrimack bridge; the mother did not take her medications as prescribed; the mother did not maintain suitable housing -- when she was not incarcerated or hospitalized, she stayed with friends and also traded sex for housing; the mother's visits with the child were sporadic due to the mother's various issues; the mother was incarcerated from February, 2016, to December, 2016; and the mother did not appear for trial in January, 2017. These few, but significant, findings amply demonstrate that the mother's fitness had not improved.

We decline the mother's request to adopt a rule that would require trial judges to give special scrutiny to kinship adoptions. The issue was not raised before the trial judge. In any event, the trial judge presumably already took into consideration the relationships among all the parties in exercising her discretion regarding postadoption visitation.