NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1417

ADOPTION OF RYA (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal involves the mother's parental rights to her children, Rya and Lois (collectively, the children).  A Juvenile Court judge found the mother unfit to care for her children and terminated her parental rights.[2]  On appeal, the mother challenges those determinations.[3]  We affirm.

---

[1] Adoption of Lois.  The children's names are pseudonyms.

[2] Rya's father executed an adoption surrender on the first day of trial.  Lois does not have a legal father.

[3] At trial, the children stated that their preference is "to return home to [the mother's] care and custody."  The judge found, however, that despite the children's caring and loving connection to the mother, it would not be in the children's best interests to return them to their mother.  On appeal, Lois filed a brief supporting the judge's decision.  Rya did not file a brief.  Her appellate counsel, however, noting that Rya had changed her mind, filed a motion requesting that Rya be allowed to join the mother's brief.  We allowed that motion.  We leave

Background.  We summarize the relevant facts from the judge's findings, reserving certain details for later discussion.  The mother's two youngest children are the subject of this care and protection petition.[4]  Rya was born in November 2013.  Rya has no unique medical issues or needs out of the range of a child her age.  Lois was born in January 2018.  Lois has attention deficit hyperactivity disorder and demonstrates behaviors that challenge her caretakers such as defiance, hitting, kicking, throwing things, and stealing.  As a result of her social and emotional needs, Lois has an individualized education plan.

The mother has a history of involvement with the Department of Children and Families (the department), as well as a long history of poorly managed mental health problems.  She has been diagnosed with depression, posttraumatic stress disorder, and bipolar disorder.  Her mental illnesses have exposed the children to violent, erratic behaviors and culminated in

_____

it to the sound discretion of the trial judge whether, upon motion of the child, to reconsider visitation in light of this change.

[4] The mother has five total children; her eldest three children were the subject of a separate care and protection petition.  The oldest turned eighteen and was dismissed from the petition; the mother signed a stipulation for judgment terminating her rights to twin boys born in 2009.

neglect, discord, and chaos for the children.  The mother's mental illnesses are not stable, as she has failed to take her medications consistently resulting in multiple psychiatric hospitalizations and in removal of her children.  Consequently, the mother's ability to parent her children is limited; she is unable to provide independent care and protection for her children and she lacks insight into the harm to the children caused by her unmanaged mental illness.

In November 2023, a trial regarding the mother's fitness as to her children took place in the Juvenile Court.  At the time of trial, Rya was nine years old, and Lois was five years old.  Ultimately, the judge held the mother unfit to parent her children and terminated her parental rights, awarding permanent custody of the children to the department.

Discussion.  The mother argues that the judge's findings do not establish that she was unfit by clear and convincing evidence because the judge relied on stale evidence.  We are not persuaded.  "To terminate parental rights to a child, the judge must find, by clear and convincing evidence, that the parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'"  Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).  "We give substantial deference

3

to a judge's decision that termination of a parent's rights is in the best interest of the child and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra.

In determining parental fitness, "a judge must consider 'a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age.'" Adoption of Garret, 92 Mass. App. Ct. 664, 671 (2018), quoting Adoption of Mary, 414 Mass. 705, 711 (1993). "Mental disorder is relevant only to the extent that it affects the parent['s] capacity to assume parental responsibility, and ability to deal with a child's special needs" (citation omitted). Adoption of Luc, 484 Mass. at 146. Also "relevant to the determination of unfitness" is a parent's failure "to recognize the need for or to engage consistently in treatment" (citation and quotation omitted). Id. at 146-147.

The mother challenges the judge's analysis, claiming that it was error for the judge to speculate about future harm to her children and to consider the mother's fitness as to her children collectively. The mother also asserts that the judge abused her discretion in terminating the mother's parental rights because the permanency plan proposed by the department was not adequate.

4

1. Unfitness. The evidence that mother's mental illness has negatively impacted her ability to parent her children is compelling. She has been psychiatrically hospitalized eight times in twelve years. The mother takes medications for her mental illnesses, but she does not take the medications consistently, achieving only temporary management. The mother also struggles "to maintain stable, healthy relationships" and to provide "a safe, stable lifestyle" that is suitable for her children.

The trial judge acknowledged that the mother has engaged in some services to address her mental health, parenting skills, and domestic violence and the judge was "convinced that [the mother] loves [Rya and Lois] deeply." However, the mother's efforts "did not result in any substantial and material or permanent change" and the mother's love "is simply not enough to prevent [the children] from harm in her care." Because her "energy is consumed with trying to manage her own needs and mental health," the mother remains unable to understand and meet her children's current needs. Thus, the judge did not clearly err or abuse her discretion in concluding, based on the clear and convincing evidence, that the mother was unfit.

2. Predictive Evidence. In determining parental fitness, a judge is "entitled to consider the evidence of [a] mother's

most recent improvements within the context of her earlier and continuing deficits."  Adoption of Jacques, 82 Mass. App. Ct. 601, 608 (2012).  Accordingly, a judge "is permitted to assess prognostic evidence derived from prior patterns of parental neglect or misconduct in determining future fitness and the likelihood of harm to the child."  Custody of Two Minors, 396 Mass. 610, 621 (1986).  See Adoption of Knox, 102 Mass. App. Ct. 84, 94-95 (2023), quoting Care and Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998) (judge may "use past conduct, medical history, and present events to predict future ability and performance as a parent").

Here, the judge considered the mother's participation in individualized therapy and the fact that she has a medication provider whom she sees every four-to-six weeks.  The judge also credited that, by the time of trial, the mother had maintained housing and attended a domestic violence education program for approximately one month.  However, the mother has resisted more intensive, longer-term treatment.  She still possesses "little insight into the cyclical pattern she has established of stability followed by chaos," and her recent improvements were "not significant enough to offset the substantial risk posed by [her] unstable mental health[] and the likely psychiatric hospitalizations in the future."

6

The judge's consideration of the mother's predicted conduct was proper. The judge did not err or abuse her discretion in relying on the mother's past, present, and predicted conduct to conclude that the mother was unfit, a conclusion supported by clear and convincing evidence. See Care and Protection of Bruce, 44 Mass. App. Ct. at 761.

3. Individualized approach. In determining whether termination of parental rights is in a child's best interests, a judge must consider a parent's fitness regarding each child. See Petitions of Dep't of Social Servs. to Dispense with Consent to Adoption, 20 Mass. App. Ct. 689, 698 (1985) ("judge erred in considering the children's best interests collectively only rather than also individually"). "The specialized needs of a particular child when combined with the deficiencies of a parent's character, temperament, capacity, or conduct may clearly establish parental unfitness" (citation omitted). Care & Protection of Thomasina, 75 Mass. App. Ct. 563, 576 (2009).

Here, the judge made specific findings about the status of each individual child at trial, including each child's individual needs and the mother's impact on each. However, the judge issued inconsistent findings about Rya; the conclusions that Rya has "special needs" "beyond the typical needs of children of [her] age" clearly contradicted both the evidence

7

and other findings that "[s]he has no special education needs and no behavioral issues to speak of."[5]  While this may have been error, it was ultimately harmless; the mother's demonstrated "pattern of dangerous and unstable behavior" and inability to break her "cyclical pattern of stability, followed by chaos and hospitalization," have created an "instability [that] would place the [c]hildren's welfare at great hazard."  As a result, "[the mother's] own mental health needs . . . eclipse the normal, developmental needs" of each child.

That the judge also made findings about the children's shared needs does not render her decision improper.  The judge listed the children's shared need for "safe and stable housing, consistent access to food and medical care, . . . assistance and supervision in their daily activities such as eating, bathing, playing, and sleeping, . . . constant supervision for their safety and support for their social, emotional, and educational growth and development."  These and others were noted by the judge to be "typical needs of youngsters of their ages."  That those particular needs overlap does not mean that the judge failed to consider their individual needs as well.  The judge noted that her conclusion that the mother is currently unfit to

_____

[5] The judge did note that Rya is engaged in individual therapy and that this should continue.

8

parent either of the children arises from consideration of each of the children's "age-appropriate and typical needs, as well as their special educational and developmental needs."

Findings to support a termination of parental rights must be by "clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence." Adoption of Darlene, 99 Mass. App. Ct. 696, 702 (2021), quoting Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "Parental unfitness . . . means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent. Rather, the idea of parental unfitness means grievous shortcomings or handicaps that put the child's welfare much at hazard. Darlene, supra, quoting Adoption of Leland, 65 Mass. App. Ct. 580, 584 (2006).

Although the judge's findings about the children's shared needs was regrettable, there was clear and convincing evidence for the judge to conclude that the mother was unfit. The judge considered evidence of the mother's mental health problems, as well as the best interests of Rya and Lois to determine that the mother was unfit. The judge's conclusions do not reflect any "clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. at 59.

4. _Permanency plan_. Prior to determining whether it would be in a child's best interest to terminate parental rights, "the judge must consider the adoption plan proposed by [the department]." _Adoption of Dora_, 52 Mass. App. Ct. 472, 474 (2001). That "adoption plan need not be fully developed to support a termination order; it need only provide sufficient information about the prospective adoptive placement 'so that the judge may properly evaluate the suitability of the department's proposal.'" _Adoption of Willow_, 433 Mass. 636, 652 (2001), quoting _Adoption of Vito_, 431 Mass. 550, 568 n.28 (2000).

Here, the department's plan at the time of trial was to "recruit an adoptive home for both [c]hildren together." The department planned to recruit a "family prepared to keep the [c]hildren together and support the healing they need through on-going services[,]" including continued individualized therapy for the children. See _Adoption of Lars_, 46 Mass. App. Ct. 30, 31-32 (1998) (department's abbreviated adoption plan was sufficient where it contained "content and substance enough to permit the court meaningfully to evaluate and consider" the department's proposal [citation omitted]). As the department's plan provided sufficient information for the judge to properly

10

evaluate the department's proposal, there was no abuse of discretion.  See Adoption of Willow, supra at 652-653.

Conclusion.  Based on the evidence, we discern no error in the judge's finding that the mother is unfit to parent her children and that termination of her parental rights was in the best interests of her children.

Decrees affirmed.

By the Court (Rubin, D'Angelo & Toone, JJ.[6]),

Clerk

Entered:  October 17, 2025.

---

[6] The panelists are listed in order of seniority.

11