GUARDIANSHIP OF HORTENSE CLAPP POLLARD.

No. 99-P-1852.

Hampshire. December 4, 2001. - March 26, 2002.

Present: GELINAS, DREBEN, & MILLS, JJ.

*Practice, Civil,* Guardianship proceeding. *Probate Court,* Guardian ad litem.

The judge in a guardianship proceeding did not abuse his discretion in deny-
ing a motion to strike the report of a guardian ad litem on the ground that
the guardian ad litem's nomination to the bench after she had prepared her
report automatically disqualified her from being cross-examined upon that
report, where the petitioners were able to cross-examine her. [322-324]

PETITION filed in the Hampshire Division of the Probate and
Family Court Department on March 16, 1998.

The case was heard by *David G. Sacks,* J., and a motion for
guardian ad litem fees was also heard by him.

*Daniel J. O'Callaghan,* pro se.

*Ellen M. Randle* for Hortense Clapp Pollard.

MILLS, J. Alison E. Clapp O'Callaghan and her husband,
Daniel J. O'Callaghan, petitioned the Hampshire County Probate
and Family Court for the guardianship of Alison's second
cousin, Hortense Clapp Pollard. The petition was filed in March
of 1998, when Hortense was almost ninety years old. The
petitioners alleged that Hortense was suffering from mental ill-
ness such that she could not care for herself and her affairs. The
petitioners later supplemented their initial petition with a request
for temporary guardianship, and purported to amend the petition
by adding "physical incapacity or illness" as a further basis for
guardianship.[1] Hortense objected, asserting health and capacity.
A guardian ad litem (GAL) was appointed by the Probate Court.

---

[1]The petitioners attempted to file the amended petition for guardianship
without the appropriate leave of court. See Rule 7 of the Rules of the Probate
Court (1959).

On June 25, 1999, after a trial, a decree entered dismissing both the original petition and the purported amended petition. The Probate Court judge issued lengthy and meticulous findings of fact and conclusions of law. In July of 1999, the petitioners filed a "Motion for MRCP Rule 52(b), Rule 59 and Probate Court Rule 7 and Other Relief," which was subsequently denied. In July of 1999, Hortense filed a motion for reimbursement from the petitioners of the fee for the GAL. The motion was allowed. The petitioners now appeal from the decree of dismissal and the orders upon the posttrial motions.

The petitioners claim that the trial judge abused his discretion or committed other reversible error by (a) denying the petitioners' motions for the recusal of the trial judge; (b) refusing to strike the GAL's report; (c) refusing to strike the court-appointed psychiatrist's report; (d) refusing to disqualify the proposed ward's legal counsel; (e) refusing to order a further psychiatric examination of the proposed ward by a physician selected by the petitioners; and (f) refusing to continue or stay the June 1, 1999, trial. The petitioners also challenge the rulings on the parties' posttrial motions.[2] We affirm the decree as well as the court's action upon posttrial motions.

1. *Background.* Hortense is an elderly woman, a widow, who lives in her home in Northampton, where she has lived her entire life. She is a person of substantial financial means and is able to continue to reside in her home with the assistance of privately-paid care givers. Alison is a second cousin to Hortense. Both Alison and Daniel are attorneys who live in Brooklyn, New York. Alison and her twin sister Jennifer were, at all times relevant to this appeal, Hortense's expected heirs.

In March of 1998, the petitioners requested the appointment of Alison and Kenneth B. Bowen (Hortense's former attorney) as coguardians of both Hortense's person and her estate, sup-

---

[2]Although the petitioners' brief and appendix are not in compliance with Mass.R.A.P. 8, as amended, 430 Mass. 1601 (1999), and Mass.R.A.P. 16, as amended, 428 Mass. 1603 (1999), we nevertheless, in our discretion, choose to reach the merits of a single claim, the refusal to strike the GAL's report. The remaining claims are without merit and warrant no discussion.

porting their petition with two medical certificates.[3] On April 16, 1998, upon suggestion of the attorneys for the parties, the court appointed Gail L. Perlman, a local attorney who had served in a similar capacity on numerous occasions, as the GAL. On the same date, the court also appointed Homayoun Shirazi, M.D., a psychiatrist, to examine Hortense's "mental status and competency, and particularly her ability to make reasoned and informed decisions regarding her care and the management of her estate."

On May 28, 1998, Perlman filed a lengthy and detailed report recommending, inter alia, that "no temporary or permanent guardianship be ordered at this time." On June 1, 1998, Dr. Shirazi reported, among other things, that Hortense was oriented to time and place and concluded, as the judge found, that:

> "[Hortense] has the present capacity to address her own needs and make financial decisions with regard to her own welfare. She is, in my opinion, capable of weighing the various options she has in managing her own personal affairs without undue influence from others. Except for poor eye sight she appeared in good physical condition and her score on a mini-mental status exam was a 28 out of a possible 29. This corresponds to a very good score on test of her cognition."

Shortly after filing her report, Perlman was nominated to be an associate justice of the Probate and Family Court Department. Because of the expectation that she would be qualified to office on or about September 28, 1998, a justice of the Probate Court entered an order requiring that Perlman's deposition be taken, if at all, during the week of September 21, 1998, and that she be "unavailable on and after September 28, 1998." The petitioners failed to take her deposition.

---

[3] In support of their guardianship petition, the petitioners filed two medical certificates from Hortense's physician, Dr. Jay Fleitman, a pulmonary specialist. The March 13, 1998, certificate was purportedly based on an examination conducted on November 24, 1997, which Dr. Fleitman acknowledged did not constitute a formal evaluation of Hortense. The other certificate is undated and was based on Dr. Fleitman's attempted examination of Hortense on March 31, 1998. In that certificate, Dr. Fleitman stated that Hortense's conduct at the attempted examination was "suggestive of an underlying dementia."

During the next few months, Daniel began to appear pro se. He also informally undertook to act as advocate for Alison, who had also noted her appearance, pro se. Although he failed to take Perlman's deposition, Daniel filed motions for a further examination of Hortense and motions seeking reconsideration of the Probate Court judge's prior orders. He also filed several petitions for interlocutory relief with a single justice of this court. The petitions were denied.

The petitioners were obviously dissatisfied with the recommendations of the GAL and the court-appointed psychiatrist. The trial judge found that the petitioners, "[o]nce having taken a position in opposition to the participation of the guardian *ad litem . . .* embarked on a deliberate, lengthy and repetitive campaign of obfuscation which had the effect of diverting energy and attention away from [Hortense] and focusing instead on [the petitioners'] personal complaints about management of the case."[4]

On February 17, 1999, the trial judge bifurcated the case and scheduled a trial solely on the issue of competency, which was held on June 1, 1999.[5] The GAL was present at the trial and

---

[4]On May 3, 1999, the petitioners filed a complaint in the United States District Court for the District of Massachusetts. The complaint named the following persons as defendants in both their individual and professional capacities: Homayoun Shirazi, M.D.; Honorable Sean M. Dunphy; Honorable David G. Sacks; Honorable Gail L. Perlman; Mary Lynn Carroll, Esquire; the law firm of Bulkley, Richardson and Gelinas, LLP; Reverend Peter B. Ives; The First Churches of Northampton; Corash, Zurn & Belsky, LLP; and Susan C. Schroder. A summary of the several forms of relief requested by the petitioners in their Federal action is contained in the judge's findings.

[5]On June 1, 1999, at 9:30 A.M., the trial judge and counsel for Hortense were present in the courtroom and prepared to begin the trial, as scheduled. Also in attendance were Dr. Shirazi, who had been served with a trial subpoena, and an assistant attorney general who was there to present a motion to quash the trial subpoena that the petitioners had served upon Chief Justice Dunphy. The petitioners arrived at approximately 10:30 A.M., initially blaming their tardiness on a medical problem. Subsequently, they revealed that the true reason for their delay was that they had traveled to Northampton that morning to cause a trial subpoena to be served on Hortense. Service occurred at 9:35 A.M., or five minutes after the trial was scheduled to commence. The trial judge found that the petitioners' "service of a trial subpoena on the day of trial was intended to both upset and intimidate [Hortense]." The petitioners were aware that Hortense's physician had communicated that she should not be put under the stress of a full courtroom appearance.

was cross-examined on her report by the petitioners. The petitioners then requested, and were provided with, the GAL's handwritten notes taken to assist with the report's preparation. The petitioners received the notes during a break before cross-examination resumed. The trial judge specifically found that, during the cross-examination of the GAL, the petitioners did not elicit any evidence to contradict Dr. Shirazi's findings. The GAL was excused as a witness after the petitioners and counsel for Hortense stated that they had no further questions for this witness. The GAL's report was incorporated in the judge's findings. While the complete report was not included in the record, we obtained and reviewed the full report. See Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979), and Mass.R.A.P. 18(a), as amended, 425 Mass. 1602 (1997).

2. *Discussion.* The petitioners allege that Perlman's participation in the trial and the consideration of her report from and after her nomination as a Probate Court judge presented a substantial appearance of judicial impropriety in violation of S.J.C. Rule 3:09, Canon 3(C)(1)(a), as appearing in 382 Mass. 811 (1981),[6] and an explicit prohibition in Rule 5 of the Rules of the Probate Court (1959).[7] We disagree.

The petitioners fail to cite, and we have not found, any Massachusetts appellate decisions that have addressed this issue. We find no authority to support the assertion that a Probate Court judge who served as a GAL prior to her nomination to the bench is automatically disqualified from being cross-examined upon her report in a guardianship proceeding prepared prior to her appointment. Canon 2 of the Code of Judicial Conduct states

---

[6]Rule 3:09 discusses the Code of Judicial Conduct. Canon 3(C)(1)(a) provides:

"(C) Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

[7]Rule 5 provides, in relevant part, "No Judge of Probate shall be appointed a guardian ad litem." Rule 5 of the Rules of the Probate Court (1959).

that a judge should not testify voluntarily as a character witness, but there is no other provision applicable to a judge's testimony. A GAL called to testify, as Perlman was called by the petitioners, does not "testify voluntarily as a character witness." The office of GAL effectively requires that she be available for cross-examination upon the GAL's report.[8] *Gilmore* v. *Gilmore*, 369 Mass. 598, 604-605 (1976).

Although the decision in *Glenn* v. *Aiken*, 409 Mass. 699, 703-704 (1991), "disfavor[s] calling a judge as a witness to opine on what ruling he might have made on a particular hypothesis," we read that case as limiting only testimony pertaining to a matter processed by the judge in her judicial capacity. See *Day* v. *Crowley*, 341 Mass. 666, 669-670 (1961) (judge cannot state secret and unexpressed reasons which actuated decision).

Although the petitioners made their request to strike the GAL's report after she was nominated to be a judge, Perlman's investigation had concluded, and her GAL report had been promptly completed and filed well before her nomination. Further, Perlman was appointed as GAL upon both counsels' suggestion, and her appointment was not mandatory to the determination of guardianship, but a discretionary appointment authorized by statute (G. L. c. 201, § 34), rule of court (Probate Court Rule 5), and common law. See *Gershaw* v. *Gershfield*, 52 Mass. App. Ct. 81, 95 (2001). The GAL's report was available to the petitioners for nearly one year prior to trial. The GAL was available for deposition and the scheduling restrictions subsequent to her judicial qualification were clear to both parties.

A GAL's report is ordinarily admissible and its use at trial should be anticipated. Such reports may contain hearsay, and "[a]ll that is required is that the guardian ad litem be available to testify at trial and that the source of the material be sufficiently identified so that the affected party has an opportunity

---

[8]We are mindful that in some circumstances the fact that the witness is a judge may have a chilling effect on cross-examination, and more so when the judge being cross-examined sits in the judicial district in which the cross-examining attorney usually practices. The record in this case does not establish that circumstance.

to rebut any adverse or erroneous material contained therein." *Adoption of Georgia*, 433 Mass. 62, 69 (2000).

Here, the trial judge acted within his discretion in denying the motion to strike, notwithstanding the possibility that the GAL might be a judge at the time of her cross-examination upon Perlman's report at trial. A reading of Perlman's report reveals that the trial judge was warranted in concluding that the GAL presented an objective report to assist him in determining the proposed ward's mental competency. See *Guardianship of a Mentally Ill Person*, 397 Mass. 93, 97 (1986). There is no contradictory legal authority, and the admissibility of relevant evidence is otherwise within the discretion of the trial judge. *McLaughlin v. Vinios*, 39 Mass. App. Ct. 5, 8 (1995).

In sum, the GAL was suggested by the parties and was qualified and experienced. The report was complete and timely filed, and it contained detailed narratives of her interviews with persons having relevant information. The petitioners had ample opportunity to depose the GAL, and she was available at trial. The petitioners cross-examined her, concluded their examination, and had no further questions. Striking the report would have deprived the court of valuable information and caused unnecessary delay. The GAL did not appear as a character witness, and the relevant information in her report was not readily available from any other source.

There was no abuse of discretion in the trial judge's denial of the motion to strike the GAL's report. Thus, the order dismissing the petition for guardianship is affirmed. The order denying the petitioners' "Motion for MRCP Rule 52(b), Rule 59, and Probate Court Rule 7 and Other Relief" is affirmed. The order allowing the motion for reimbursement from the petitioners of GAL fees is also affirmed.

*So ordered.*