# GUARDIANSHIP OF PHELAN.[1]

No. 09-P-1452.

Suffolk. December 10, 2009. - May 20, 2010.

Present: LENK, DUFFLY, & McHUGH, JJ.

*Practice, Civil,* Appointment of guardian, Guardianship proceeding, Motion to dismiss, Summary judgment. *Minor,* Guardian ad litem, Care and protection, Custody. *Juvenile Court,* Jurisdiction.

Discussion of the guardianship statute, and statement that where competing plans for the placement of a child are presented to a judge through care and protection and guardianship proceedings, the matters generally should be heard together. [748-750]

In the circumstances of proceedings for the care and protection of a child and for guardianship of a child, the failure of the petitioner for guardianship, who was the child's aunt, to appeal from an order of a Juvenile Court judge terminating her participation in the care and protection proceeding, or to appeal either from the denial of her motion to intervene in the care and protection proceeding or from the denial of her motion to consolidate the care and protection and guardianship proceedings, did not bar her subsequent appeal from the dismissal of her guardianship petition, where the aunt was not required to litigate exclusively in the context of the care and protection proceeding the issue whether a guardianship placement with her was in the child's best interest, or to forgo proceeding on her guardianship petition in favor of appealing immediately all of the judge's decisions removing or excluding her from the care and protection action [750-751]; further, the aunt's guardianship petition did not constitute an improper collateral attack on the decision in the care and protection proceeding, from which she did not appeal, that adoption was in the child's best interests [751-752].

In the circumstances of proceedings for the care and protection of a child and for guardianship of a child, a Juvenile Court judge erred in dismissing a petition for guardianship filed by the child's aunt, regardless of whether the judge treated the disposition of the petition as a motion for summary judgment or instead decided the petition on the history of the aunt's involvement in the proceedings, the evidence presented during the course of the care and protection proceedings (to which the aunt was a party and in which she had the opportunity to refute the evidence presented), and the ultimate determination that adoption was in the child's best interests, where, as to the latter possibility, the judge relied on the report of a guardian ad litem with respect to which the aunt never had an opportunity to litigate or rebut the material and opinions contained therein; and where, as to the former possibility, summary judgment was not appropriate given

---

[1] A pseudonym, as are all the children's names in this opinion.

that the ultimate question, i.e., what placement serves the best interests of the child, involved the resolution of disputed issues of material fact or the weighing of evidence. [752-757]

PETITION filed in the Cambridge Division of the Juvenile Court Department on September 14, 2007.

A motion to dismiss was heard by *Gwendolyn R. Tyre*, J.

A motion to stay the dismissal of the petition pending appeal was heard in the Appeals Court by *Green*, J.

*Claudia Leis Bolgen* for the aunt.

*Brian Pariser* for Department of Children and Families.

*Maura J. Hardiman* for the child.

LENK, J. The maternal aunt of a child, Phelan, appeals from (1) a judgment of the Juvenile Court dismissing her petition for appointment as guardian, with custody, of Phelan, and (2) an order of the single justice of this court staying the dismissal of the guardianship petition pending appeal but denying her request, as interpreted by the single justice, to stay the progress of the adoption of Phelan flowing from a care and protection action. We vacate the judgment dismissing the petition for guardianship and remand the matter to the Juvenile Court for a prompt trial on the petition. We dismiss the appeal from the order of the single justice.

1. *Background.*[2] Phelan was born in the State of Georgia in December of 1997; no father was listed on his birth certificate. Before Phelan's birth, the aunt, who then apparently resided in Georgia, was granted custody of five of Phelan's older siblings by a Georgia court. In 2003, a Georgia court found Phelan and his sister, May, to be "deprived" and ordered that temporary custody of the children be removed from their biological mother and placed with the aunt (who had moved to Massachusetts) "under the protective supervision" of the Massachusetts Department of Children and Families (department). After a finding in 2004 that the two children continued to be "deprived," the Georgia court ordered that "long term relative placement of the children is granted to the . . . aunt."

[2]On appeal, the aunt and the Department of Children and Families (department) refer to and discuss, as they did below, the care and protection action (and certain earlier proceedings involving Phelan in the courts of the State of Georgia). We shall do the same.

On November 2, 2005, the department filed a care and protection petition against the aunt on behalf of Phelan and four of his siblings alleging physical abuse (corporal punishment) of the children by the aunt.[3] A judge of the Juvenile Court awarded emergency temporary custody of the children to the department on that date, and Phelan was placed in a foster home. On November 7, 2005, the aunt waived her right to a seventy-two hour hearing, and the judge awarded temporary custody of the children to the department.

On September 15, 2006, the aunt, represented by counsel, stipulated to a finding of unfitness, and the children were found in need of care and protection. At the time the aunt stipulated to unfitness, the department's goal was reunification of the children with the aunt. However, by late October, 2006, the department had changed its goal with respect to Phelan and May to adoption.[4]

In May, 2007, the aunt filed a motion to stay the care and protection proceedings pending the resolution of certain jurisdictional issues. After a hearing, the Juvenile Court judge rejected the aunt's jurisdictional challenges and determined further that the aunt had never been conferred with guardianship status with respect to Phelan and had no other standing to participate in the care and protection proceedings. The aunt did not appeal the judge's order dated September 5, 2007.[5]

On September 14, 2007, the aunt filed the instant petition for appointment of guardian of minor child pursuant to G. L. c. 201, in which she sought to be appointed guardian of Phelan, with custody. A hearing on the merits of the petition was scheduled

---

[3]The department filed an earlier care and protection petition against the aunt in August, 2004, alleging that an older sibling of Phelan had been physically abused in Phelan's presence. The petition was dismissed as to Phelan some six weeks later.

[4]After a permanency hearing in December, 2006, the Juvenile Court judge issued an order pursuant to G. L. c. 119, § 29B, indicating that it was the department's plan to place Phelan for adoption and that she, the judge, did not approve such a plan absent trial. The judge also determined, based on the testimony of the aunt, that the department had not made reasonable efforts toward reunification.

[5]In her memorandum and order of decision, the judge also detailed her reasons for denying the aunt the right to participate in the proceedings either as a de facto parent or as a long-term placement for Phelan. The aunt acknowledges in her brief that the judge's order of September 5 terminated her "party status" in the care and protection proceeding.

for January 25, 2008. In the meantime, a hearing was scheduled on that same date on the department's permanency plan (dated November 15, 2007) in the care and protection case, in which the department sought to place Phelan for adoption. Although lacking party status in the care and protection proceeding, in both proceedings the aunt filed objections to the department's permanency plan and submitted an alternative permanency plan in which she requested that Phelan be reunited with her.

On January 23, 2008, the aunt filed a motion to intervene in the care and protection action with respect to Phelan and May. She also filed a motion requesting the judge to consolidate and order a joint hearing on the merits in the care and protection and guardianship matters (and to grant her full party status in the care and protection proceeding).

On January 25, 2008, the aunt's motions to intervene and to consolidate were denied (although the denials appear only on the docket in the care and protection proceeding), the petition for guardianship was referred to mediation,[6] and, after a hearing, the judge approved the department's permanent plan of adoption for Phelan and determined that the department had made reasonable efforts to implement that plan. The aunt did not attempt to appeal from the orders denying her motions to intervene and to consolidate.

The biological mother executed an adoption surrender with respect to Phelan on March 14, 2008, and on October 9, 2008, the judge terminated the parental rights of any unknown or unnamed father. A guardian ad litem for Phelan was also appointed in the guardianship proceeding and filed an "updated report."[7]

2. *The motion to dismiss.* On December 15, 2008, the department and the child filed a joint motion to dismiss the guardianship petition (unsupported by affidavit), which was heard on December 16, the day trial on the petition was to commence.[8] At the time of the hearing on the motion, it was undisputed that

[6]It is not clear on the record before us why the guardianship petition was referred to mediation.

[7]The same guardian ad litem was appointed for Phelan in the care and protection proceeding. She prepared her original report in March, 2007.

[8]The aunt, through counsel (not her present appellate counsel), declined the judge's invitation to provide her with additional time to make "a meaningful response" to the motion and agreed to argue the motion.

three of the four siblings (including May) who were removed with Phelan from the aunt's custody through the care and protection proceeding had been returned to the aunt's care and custody.[9] It was the department's position at the hearing, as well as that of then counsel for Phelan, that notwithstanding the reunification of Phelan's siblings with the aunt, Phelan had been in his preadoptive foster home since 2005 and, as evidenced, in part, by the guardian ad litem's updated report (which was before the judge), had psychologically bonded with his preadoptive family and had been thriving in that home, had consistently expressed his view that he did not wish to return to the care and custody of the aunt, and had suffered emotional scars from his time with the aunt that would render his return to the aunt traumatic. Continuing, counsel noted that the guardian ad litem had recommended that Phelan remain in his preadoptive home and that adoption be completed as soon as possible, and that the current plan for adoption had been approved by the judge in the care and protection proceeding.[10] In counsels' view, even if they were to "stipulate to anything [the aunt's counsel] were to present to the court," there simply could be no basis for the judge to conclude that it was necessary, convenient, and in Phelan's best interests to be placed in the permanent guardianship of the aunt.

The aunt, in response, stated through counsel that the department and the child's attorney were, in effect, attempting to turn their motion to dismiss into one for summary judgment and that there were contested issues for trial in the case. More specifically, counsel asserted that the aunt had "evidence to put [i]n" that would show that things had changed since September, 2006: she had engaged a therapist and participated in a program for African-American families to help her address and change the disciplinary system she had grown up with, she had renounced and refrained from the use of physical punishment with the children, and she had participated in other programs and would call witnesses to show how she had changed and how she now addressed

[9]The papers in the record appendix indicate that the other sibling who was removed from the home had attained the age of eighteen.

[10]Counsel for the department also represented at the hearing that a maternal uncle who resided out of state had come forward seeking placement of Phelan with him. At the time of the hearing, a home study was being conducted with respect to the uncle.

family and disciplinary issues, and that she, as a registered nurse and one who had participated in such programs, could assist Phelan with any issues of trauma resulting from his reunification with her and his siblings. Counsel for the aunt also represented that the siblings in her care were having difficulty visiting Phelan in his placement home[11] and were "anxious to come in and tell the court why they wanted [Phelan] to come home and live with them at their [aunt's] house."[12] Counsel requested that the trial go forward so that the judge could hear the evidence "that so far [she had] only heard in reviews and in oral recitation by counsel or in written reports from [the department] or from the guardian ad litem."

At the close of the hearing on the motion to dismiss, the judge allowed orally the motion, stating that even assuming everything the aunt's counsel stated were true "in terms of [the aunt] and about the siblings wanting visitation and the like," none of it was "focused on the best interests" of Phelan. Rather, the judge pointed to the two care and protection actions that had been brought against the aunt which implicated Phelan and the aunt's stipulation of unfitness and the commitment of Phelan to the custody of the department. The judge noted, in addition, that she had made "several findings" based on a social worker's report that included the recommendation of Phelan's therapist that adoption was in the best interests of Phelan. Even assuming, the judge stated, that she struck all the grounds for the guardian ad litem's recommendation to which the aunt had objected, she still was left with the "inescapable recommendation by the GAL, back in March of '07 [in the care and protection case] as well as today . . . that it is in the best interest of this child to be adopted."[13] The judge also made reference to statements by an expert retained by the aunt that apparently appear in the March,

[11]Counsel for Phelan represented that there had been problems with visits but that these problems were the result of the adults being unable to come to agreement. Counsel also represented that Phelan was "surprisingly ambivalent" about visiting with his siblings and that he currently did not want to see either the aunt or his siblings.

[12]Counsel for the aunt also made an oral motion to strike portions of the guardian ad litem's updated report and suggested that the report was deficient in that it did not indicate any conversations between the guardian ad litem and the aunt.

[13]The guardian ad litem stated in her November, 2008, report that "[i]t is

2007, guardian ad litem report that Phelan's "behavioral dis-regulation" was characteristic of a child with posttraumatic stress symptoms and that Phelan's environment at the aunt's home could best be described as a "toxic environment" for the child. While acknowledging that the environment in the aunt's house had changed, the judge stated: "[B]ut we still have the memories of the traumatic behavior experienced in that home . . . [a]nd this is a child who needs to be stable and secure and have some predictability to his future."[14]

3. *The guardianship statute.* We comment initially on aspects of the guardianship statute that, to some extent, inform our analysis in the present appeals. General Laws c. 201, § 1, as in effect at the time of the proceedings in the Juvenile Court, pro-vides, in part: "The district or juvenile court may, when it ap-pears necessary or convenient, appoint guardians of minors if the person who is the subject of the petition is a minor and there is a proceeding before such district or juvenile court."[15] See Cross,

---

the continued recommendation of this GAL that [Phelan] who is thriving in the preadoptive home [of a named individual] remain with the [preadoptive family] and have the adoption completed as soon as possible." The judge noted in her oral findings the recommendation of the guardian ad litem that Phelan "remain in his pre-adoptive home."

[14]By letter dated March 18, 2010 (purportedly pursuant to Mass.R.A.P. 16 [l], as amended, 386 Mass. 1247 [1982]), counsel for the aunt represented to this court that she had received confirmation from Phelan's appellate attorney that the child's preadoptive placement has been disrupted. The department and counsel for the child have moved to strike the "rule 16 (l)" letter as it goes beyond the scope of that rule (which pertains to the citation of supplemental authorities) and, the department states, contains posttrial and postjudgment information that was not before the court. See generally *Adoption of Inez*, 428 Mass. 717, 722 (1999); *Adoption of Willow*, 433 Mass. 636, 644 n.8 (2001); *Adoption of Cesar*, 67 Mass. App. Ct. 708, 716 n.11 (2006). For purposes of this appeal we have not considered the representation of the aunt's counsel.

[15]Section 21 of Chapter 521 of the Acts and Resolves of 2008 repealed G. L. c. 201, effective July 1, 2009, and it has been replaced by G. L. c. 190B. St. 2008, c. 521, §§ 9, 44. *Care & Protection of Thomasina*, 75 Mass. App. Ct. 563, 564 n.4 (2009). See *R.D.* v. *A.H.*, 454 Mass. 706, 711 n. 7 (2009). General Laws c. 190B, § 5-201, effective July 1, 2009, now provides, in part: "The district or juvenile court may appoint guardians of minors if the person who is the subject of the petition is a minor and there is a proceeding before such district or juvenile court and shall have continuing jurisdiction over resigna-tion, removal, reporting, and other proceedings related to the guardianship."

We note that the Probate Court also had authority to appoint guardians of minors under G. L. c. 201, § 1.

Fleischner, & Elder, Guardianship and Conservatorship in Massachusetts § 9.04 (2000) (noting that the Juvenile Courts have interpreted this jurisdiction "as empowering that court to accept separate petitions for guardianship of a minor so long as an action regarding the subject child is already before that court"). Commonly, the action "before . . . [the] juvenile court" will be one involving the welfare of a child under G. L. c. 119. Karp, Child Welfare Practice in Massachusetts § 19.4 (Mass. Cont. Legal Educ. 2006 & Supp. 2009). See Juvenile Court Standing Order 2-07 (noting that the Juvenile Court Department has jurisdiction over three major case types involving the welfare of children and matters ancillary to these three case types including guardianship petitions). A guardianship action may arise, for example, when a relative who is not a party to a care and protection proceeding files a petition seeking placement with her of a child. See Child Welfare Practice in Massachusetts, *supra* at § 19.4. Although each case must be decided on its own peculiar facts, where competing plans for the placement of a child are presented to the judge through care and protection and guardianship proceedings (and particularly where, as here, the department's permanency plan goal was to place the child for adoption), the matters generally should be heard together.[16] See, e.g., *Adoption of Leland*, 65 Mass. App. Ct. 580, 583 (2006) (guardianship petition consolidated with care and protection petition); *Adoption of Yvette (No. 1)*, 71 Mass. App. Ct. 327, 333-334 (2008) (judge ordered that termination case and guardianship case be heard concurrently, but not consolidated, with counsel for the aunt having "full access to the proceedings and the evidence" in the termination case although the aunt was not made a party thereto); Child Welfare Practice in Massachusetts, *supra* at § 19.4.1 ("Although a guardianship petition filed in the Juvenile Court typically is heard together with a pending care and protection . . . case, it is a separate court action and will have its own docket number"). Cf. Mass.R.Civ.P. 42(a), as amended, 423

---

[16]This would seem especially appropriate where the person seeking guardianship was excluded from the care and protection proceeding on what might be viewed as technical grounds. More generally, when considering the exclusion of a person from a care and protection proceeding, it is prudent to factor into the analysis the potential impact of such exclusion, if erroneous, upon the finality of the proceeding.

Mass. 1402 (1996) (allowing for consolidation when actions involving a common question of law or fact are pending before the court). See and compare *Care & Protection of Thomasina*, 75 Mass. App. Ct. 563, 564 (2009).

4. *The propriety of the dismissal of the guardianship petition.* The aunt argues that it was error for the judge to grant summary judgment in favor of the department and Phelan and to dismiss her guardianship petition because material facts were in dispute as to what placement was in the best interests of Phelan. The department and, to a lesser extent, appellate counsel for Phelan raise preliminary hurdles to our consideration of the aunt's contentions, arguing that the judge properly dismissed the guardianship petition as the aunt, who had numerous opportunities to participate in the care and protection proceedings (and thereby accomplish her objectives of putting herself forth as a permanent placement for Phelan) and "neglected the opportunity" to seek a review and redetermination of the care and protection judgment, appeal the judge's decision to terminate her participation in the care and protection proceedings, and appeal either the judge's denial of her request to consolidate the care and protection and guardianship matters or the denial of her motion to intervene. Having forgone or waived these opportunities, the department argues, the aunt "could not, through the filing of a guardianship petition, subsequently attack the trial court's judgment in the care and protection matter, based substantially upon evidence presented while she was a party to that proceeding."

It is noteworthy that the arguments proffered by the department and counsel for Phelan were not raised in any meaningful way in the joint motion to dismiss or at the hearing on the motion. While "[a] party may defend a judgment on any ground based on the record so long as raising the argument is not unfair to its opponent," *Perseus of N.E., MA, Inc. v. Commonwealth*, 429 Mass. 163, 168 (1999), and cases cited, the particular arguments raised by the department and Phelan have the flavor of affirmative defenses, which, under rules of civil and domestic relations procedure (see discussion, *infra*), are generally waived if not set forth affirmatively. See Mass.R.Civ.P. 8(c), 365 Mass. 749 (1974); Mass.R.Dom.Rel.P. 8(c) (listing, for example, the affirmative defenses of waiver, estoppel, and res judicata). See also *Demoulas v. Demoulas*, 428 Mass. 555, 575 n.16 (1998). Though we

think it is questionable whether the department and counsel for Phelan properly may defend the dismissal of the guardianship petition on the arguments made, we nonetheless address these preliminary contentions.

Contrary to the apparent assertions of the department and counsel for Phelan, we perceive nothing in the circumstances of this case that would cause us to conclude that the aunt was required either (1) to litigate exclusively in the context of the care and protection proceeding the issue of whether a guardianship placement with her was in Phelan's best interests or (2) to forgo proceeding on her guardianship petition in favor of appealing immediately all of the judge's decisions removing or excluding her from the care and protection action.[17] No authority has been called to our attention that would require such a result.[18] That the aunt is not a proper party in the care and protection case would not preclude her from seeking placement of Phelan through a guardianship petition.

We fail to discern merit in the department's further argument that the aunt's guardianship petition was an improper collateral

[17]Neither the department nor counsel for Phelan addresses the possibility that the order denying the aunt's motion to consolidate the guardianship and care and protection proceedings may be interlocutory in nature, see *B.M.C. Durfee Trust Co. v. Turner*, 299 Mass. 276, 279 (1938) (a prerules case); cf. 8 Moore's Federal Practice par. 42.12 (3d ed. 2010), and not subject to review in this court pursuant to G. L. c. 231, § 118. See *Care & Protection of Sophie*, 449 Mass. 100, 103-104 (2007); *Care & Protection of Zita*, 455 Mass. 272, 278 (2009). Compare G. L. c. 211, § 3 (general superintendence power of the Supreme Judicial Court). Furthermore, although the department claims that the aunt had a right to appeal from the "final judgment" denying her motion to intervene, it fails to discuss whether the aunt's motion, made by analogy to Mass.R.Civ.P. 24, 365 Mass. 769 (1974), and Mass.R.Dom.Rel.P. 24, was one seeking permissive intervention or intervention as matter of right with respect to Phelan. See *Care & Protection of Rae*, 454 Mass. 1019, 1019-1020 (2009), and cases cited (indicating that a denial of a claim of intervention as of right is immediately appealable, as is denial of permissive intervention when raised concurrently); *Care & Protection of Richard*, 456 Mass. 1002, 1002 (2010). See also *Care & Protection of Zelda*, 26 Mass. App. Ct. 869, 871 (1989). Finally, it is not clear whether hearings were held on the motions and, if held, what transpired thereat.

[18]We also find unpersuasive the department's suggestion that the aunt's guardianship petition, which essentially sought a determination that Phelan's placement with her was in his best interests, was an improper collateral attack on the judge's unappealed decision to terminate the aunt's standing as a party in the care and protection proceeding.

attack on the "unappealed" decision that adoption is in Phelan's best interests. This argument seems to be based on the premise that the aunt had the opportunity to litigate fully, and appeal from, the judge's decision that it was in Phelan's best interests to be adopted rather than be placed with her. More to the point, to the extent the department may assert that the aunt had sufficient opportunity to litigate the issue whether Phelan should be placed with her through the permanency plan process contemplated by G. L. c. 119, § 29B,[19] it is certainly true that the aunt engaged in that process, with some success, as late as December, 2006 (see note 4, *supra*). However, by the time permanency plan hearings were held in January, 2008 (when the judge approved the department's permanent plan for adoption for Phelan), and December, 2008, the aunt was no longer a party in the care and protection case, her party status having been terminated on September 5, 2007, and she could not appeal under the permanency plan statute. See G. L. c. 119, § 29B ("A child, parent, guardian or the department may appeal to the appeals court from the determination or order of the trial court").[20]

Turning to the aunt's claim that the judge erred in dismissing

---

[19]General Laws c. 119, § 29B, first par., as amended through St. 1999, c. 3, § 12, provided, in relevant part:

> "Except as provided herein, within 12 months of the original commitment, grant of custody or transfer of responsibility of a child to the department by a court of competent jurisdiction, and not less frequently than every 12 months thereafter while the child remains in the care of the department, the committing court shall conduct a permanency hearing . . . to determine and periodically review thereafter the permanency plan for the child."

The first paragraph was subsequently amended by St. 2008, c. 176, § 86, effective July 8, 2008.

[20]We also reject the department's suggestion that the aunt was barred from an evidentiary hearing on her guardianship petition because she could have raised the issue of her changed circumstances through a "review and redetermination" petition pursuant to G. L. c. 119, § 26, as in effect prior to St. 2008, c. 176, § 84, at any time prior to her removal from the care and protection case in September, 2007. However, as the aunt correctly notes, the statute limits the class of persons entitled to file such a petition to "the department, parents, person having legal custody of, counsel for a child, the probation officer, guardian or guardian ad litem." Here, the aunt was not a person having legal custody of Phelan after legal custody of him was transferred to the department in September, 2006. Neither was the aunt, as determined by the judge, the "guardian" of Phelan.

her guardianship petition, the aunt and the department disagree whether summary judgment principles provide the appropriate standard under which the judge's decision should be reviewed. The aunt, stating that it is not clear what procedural rules should be applied to a "motion to dismiss" a guardianship case brought in the Juvenile Court, argues that we should look by analogy to the Rules of Civil Procedure, and particularly Mass.R.Civ.P. 56, as amended, 436 Mass. 1404 (2002) (due to the judge's consideration of matters outside the pleadings, see *Reliance Ins. Co.* v. *Boston*, 71 Mass. App. Ct. 550, 555 [2008]), as the "cogent standard." See *Care & Protection of Richard*, 456 Mass. 1002, 1002 n.3 (2010), quoting from *Care & Protection of Zelda*, 26 Mass. App. Ct. 869, 871 (1989) ("Although the rules of civil procedure are not applicable to proceedings in the Juvenile Court, Mass.R.Civ.P. 24 . . . 'may well be accepted as a cogent standard' "). See also *Adoption of Reid*, 39 Mass. App. Ct. 338, 341 (1995); *Adoption of Yvette (No. 1)*, 71 Mass. App. Ct. at 335 n.9. Cf. Rule 27B of the Probate Court Rules and Reporter's Notes (2010) (summary judgment under Mass.R.Civ.P. 56 available in at least certain probate proceedings).[21,22] The department

[21]The Rules of Civil Procedure apply expressly to the Juvenile Court in proceedings seeking equitable relief (e.g., a civil action brought in the Juvenile Court seeking specific performance of a postadoption contract). Mass.R.Civ.P. 1, as amended, 450 Mass. 1403 (2007). Reporters' Notes to Rule 1, Mass. Ann. Law Court Rules, Rules of Civil Procedure, at 3 (LexisNexis 2009-2010). Rule 1 of the Juvenile Court Rules for the Care and Protection of Children (2010) (which rules contain no specific provisions for summary judgment) applies to all actions in the Juvenile Court "for the care and protection of children, including actions for guardianship of minors, . . . custody, guardianship or any other disposition of the child pursuant to G. L. c. 119 and c. 210." Rule 3 of said rules (concerning process) refers specifically to guardianship of minor cases pursuant to G. L. c. 201, §§ 2 et seq.

[22]The aunt makes no argument that the Rules of Domestic Relations Procedure, which govern the procedure in the Probate and Family Court in specified cases, including those involving the custody of minor children, should be viewed as providing the appropriate "standard." There were, and are, substantial differences between the Rules of Civil Procedure and the Rules of Domestic Relations Procedure with respect to summary judgment. Under the Rules of Domestic Relations Procedure in effect at the time of the hearing on the motion to dismiss the guardianship petition, summary judgment was applicable only in actions for modification and actions to modify and enforce a foreign judgment. See Mass.R.Dom.Rel.P. 56, as in effect prior to May 1, 2009. See *J.F.* v. *J.F.*, 72 Mass. App. Ct. 782, 790-791 (2008) (where we noted that

counters, asserting that the judge did not dispose of the guardianship petition by means of summary judgment, but rather on the history of the aunt's involvement with the judge, the evidence presented during the course of the care and protection proceedings to which the aunt was a party and had the opportunity to refute, and the ultimate determination that Phelan's adoption was in his best interests. We conclude that under either approach the judge erred in dismissing the petition for guardianship.

The department, while acknowledging that the aunt was excluded from the care and protection case in September, 2007, asserts that she was still a party to that case in March, 2007, when the guardian ad litem filed her original report. The department's argument is grounded, in considerable part, on its view that in dismissing the guardianship petition, the judge properly considered papers in the care and protection proceeding such as the March, 2007, report, insofar as the aunt was at the time "a party [in the care and protection case] with a compelling incentive to litigate." Cf. *Adoption of Darla*, 56 Mass. App. Ct. 519, 520-521 (2002). Even if we accept the doubtful proposition that it was proper for the judge to consider on a motion to dismiss the aunt's activities in a different case, it appears that the aunt never in fact had the opportunity to litigate with respect to the March, 2007, report. Indeed, there is no indication on the docket of the care and protection case of a contested evidentiary hearing where the March, 2007, report was offered into evidence (and the guardian ad litem made available for or subject to cross-examination), see *Gilmore* v. *Gilmore*, 369 Mass. 598, 603 (1976); *Adoption of a Minor*, 22 Mass. App. Ct. 468, 469 n.1 (1986), or where the aunt had the opportunity to rebut the material and opinions con-

although there is "nothing in the language of Mass.R.Dom.Rel P. 56, or in the nature of child custody in general, . . . that would necessarily preclude the use of summary judgment in child custody modification actions," judges should "proceed with great caution in deciding whether summary judgment is appropriate in a custody modification proceeding"); *R.S.* v. *M.P.*, 72 Mass. App. Ct. 798, 806 & n.14 (2008).

By the May 1, 2009, amendment to Mass.R.Dom.Rel.P. 56, summary judgment is no longer available in actions for custody or visitation.

Even were we to view the Rules of Domestic Relations Procedure as in effect at the time of the hearing on the motion to dismiss as providing the cogent standard, and were to treat the aunt's petition as falling generally within the scope of the rules, for the reasons we shall discuss in the text, *infra*, summary judgment in favor of the department and Phelan should not have been granted.

tained in the report.[23] See Guardianship of Pollard, 54 Mass. App. Ct. 318, 323-324 (2002). See generally Care & Protection of Zita, 455 Mass. 272 (2009). Compare and contrast J.F. v. J.F., 72 Mass. App. Ct. 782, 790 n.12 (2008) (where both parties relied on statements of individuals reporting to the guardian ad litem, and the mother had accepted as "true" the numerous "facts" stated in her brief for purposes of summary judgment). That the judge indicated (somewhat obliquely) at the December 16, 2008, hearing on the motion to dismiss that she would, for purposes of the motion, "strike all of the grounds for the GAL's recommendation, which [were] objected to by the aunt," does not remediate the judge's reliance on the recommendation of the guardian ad litem (and, apparently, other statements in the guardian ad litem's report, including those of the expert retained by the aunt) in the circumstances presented.[24]

To similar effect, even were we to assume, as the aunt asserts, that summary judgment principles, as reflected in the Rules of Civil Procedure, are applicable in the present case,[25] the order dismissing the guardianship petition cannot stand. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law." Petrell v. Shaw, 453 Mass. 377, 381 (2009). The moving parties "must 'affirmatively demonstrat[e] that there is no genuine issue of material fact on every relevant issue, even if [they] would have no burden on an issue if the case were to go to

---

[23]The aunt filed in the care and protection proceedings a motion to strike with respect to the guardian ad litem's 2007 report. The motion was denied. Notwithstanding the denial, counsel for the aunt stated at the hearing on the motion to dismiss that he had filed a motion to strike the guardian ad litem's report in the care and protection action and if the report from that proceeding were introduced in the guardianship case, he would request that his motion be heard.

[24]To the extent the judge also relied on the updated report of the guardian ad litem dated November 15, 2008, there is, again, no indication that the guardian ad litem was made available for or subject to cross-examination.

[25]We have stated that "certain aspects of custody proceedings do not fit readily within the traditional summary judgment framework." J.F. v. J.F., 72 Mass. App. Ct. at 790 n.12. See also note 21, supra. We note that counsel for Phelan has fashioned her appellate argument based on summary judgment principles in the event this court were to accept the aunt's position that the Rules of Civil Procedure have application in the present case. The department has also proffered an alternative argument based on the premise that the judge disposed of the guardianship petition by means of summary judgment.

trial.' " *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 674 (2003), quoting from *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). *J.F.* v. *J.F.*, 72 Mass. App. Ct. at 789. "All evidentiary inferences are to be resolved in favor of the party opposing the motion for summary judgment." *Id.* at 789-790. "In deciding a motion for summary judgment, a court does not resolve issues of material fact, assess credibility, or weigh evidence." *Kernan* v. *Morse*, 69 Mass. App. Ct. 378, 382 (2007).

At the outset, the judge's reliance on the guardian ad litem's reports (including the statements of the expert retained by the aunt apparently appearing in the 2007 report) suffers from the infirmities we have previously discussed. The judge also seems to have assessed implicitly the credibility of the guardian ad litem.[26] Those points aside, the parties appear to proceed on the appeal, as did the judge below, on the premise that the ultimate question presented by the aunt's guardianship petition is what placement serves the best interests of the child. Cf. *Adoption of Irene*, 54 Mass. App. Ct. 613, 617 (2002) (best interests of child the "driving factor" in choosing between alternative plans for adoption); *Care & Protection of Amalie*, 69 Mass. App. Ct. 813, 820 n.8 (2007). We have indicated, in other contexts, that the determination of a child's best interests will most often involve the resolution of disputed issues of material fact or the weighing of evidence, considerations that would render inappropriate summary judgment. See e.g., *J.F.* v. *J.F.*, 72 Mass. App. Ct. at 791-792; *Adoption of Irene*, 54 Mass. App. Ct. at 617 ("[w]here

---

[26]To the extent counsel for Phelan asserts that "had [the] aunt truly wanted to rebut inaccurate information contained in the report, [she] could have called the guardian ad litem as a witness at the motion hearing," counsel misperceives the nature of the summary judgment process. If a hearing is necessary to resolve disputed issues of material fact, a grant of summary judgment is inappropriate. It is also evident from the transcript of the motion hearing that the judge did not offer the aunt an evidentiary hearing but rather the opportunity to make a more detailed and meaningful response to the joint motion to dismiss the guardianship petition. Counsel for Phelan's additional argument that the aunt's verbal offers of proof (at the motion hearing) as to forthcoming testimony amounted simply to "unsupported speculation" ignores the acknowledgments of Phelan's attorney at the motion hearing that the aunt had undergone extensive work since Phelan was removed from her custody and that Phelan's minor siblings had been returned to the aunt's custody, and his apparent willingness at one point to stipulate with the department "to anything that [the aunt's] counsel were to present to the Court."

the objective is a child's best interests, factual determinations are necessarily involved"). Here, notwithstanding the judge's statement in her oral findings that the aunt's proffered evidence did not focus on Phelan's best interests (a point on which we disagree), the judge's findings, viewed in their entirety, suggest that the judge impermissibly weighed the "evidence" put before her and resolved factual disputes, including whether the aunt or Phelan's current caretaker would be better able to provide for the child's best interests.

An evidentiary hearing is required in the instant matter so that all appropriate circumstances (including, for example, the changes the aunt has undergone with respect to her child rearing capabilities and disciplinary practices; the current environment in the aunt's home; the impact upon Phelan, if any, of his separation from his siblings, now in the custody of the aunt; and the expressed wishes of the child) can be further explored, and weighed, in determining whether guardianship by the aunt would serve the best interests of the child. See *R.S.* v. *M.P.*, 72 Mass. App. Ct. 798, 805-806 (2008). Simply put, this is not a case where summary judgment is appropriate, let alone compelled. See *J.F.* v. *J.F.*, 72 Mass. App. Ct. at 792 n.14. To the contrary, the issues presented, "which may implicate the welfare of the [child], are 'too weighty to end the action at this early stage.' " *R.S.* v. *M.P.*, 72 Mass. App. Ct. at 806, quoting from *Gilchrist* v. *Commissioner of Correction*, 48 Mass. App. Ct. 60, 66 (1999).[27]

5. *The motion to stay.* In the light of our issuance of this opinion (and in the absence of any indication that the department has attempted to proceed with Phelan's adoption) it is not necessary to address the propriety of the order of the single justice on the aunt's motion to stay *pending* the appeal. While we are cognizant of the importance of permanency in a child's life, on all that we have said in this case we trust that the department will not seek to effectuate the adoption of Phelan during the pendency of the proceedings on remand.

6. *Conclusion.* The judgment dismissing the petition for guardianship is vacated and the matter is remanded to the Juvenile Court for a prompt trial on the petition. We deny the aunt's

---

[27]We express no opinion whether the aunt's guardianship petition ultimately should be granted.

request that the matter be assigned to a different judge of the Juvenile Court. The appeal from the order of the single justice is dismissed.

*So ordered.*