NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1104

GUARDIANSHIP OF L.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial, a judge of the Probate and Family Court found the respondent L.S. to be an incapacitated person and entered a decree appointing a guardian on her behalf. See G. L. c. 190B, §§ 5-101, 5-306. L.S. appeals, arguing that the judge erred by admitting a guardian ad litem (GAL) report in evidence, that the evidence was insufficient to prove that L.S. was an incapacitated person, and that the judge lacked authority to empower the guardian to revoke L.S.'s health care proxy. We affirm.

Background. At the time of trial in April 2022, L.S. was sixty-two years old and living in a nursing facility. She was diagnosed with diabetes, depression, anxiety, and dementia and had been hospitalized over fifty times between August 2020 and April 2021.

On April 15, 2021, before L.S. was admitted to the nursing facility, the Elder Services of Worcester Area, Inc. (ESWA),

filed an ex parte petition and motion for emergency orders under G. L. c. 19A, § 20 (elder-abuse petition), claiming that L.S. was at serious risk of harm to herself and others and in need of protective services. ESWA alleged that L.S. was chronically homeless despite intervention; that she had presented at the emergency room fifty-five times in the prior twelve months; that she frequently left the hospital with her daughter, who made assurances that she would care for her mother and find her suitable housing; but that L.S. nonetheless continued to return to the emergency room or the homeless shelter. ESWA further alleged that L.S. executed a document on April 6, 2021, naming her daughter as her health care proxy, but there were "serious concerns" about L.S.'s capacity to execute the document.

The same day the petition was filed, a Probate and Family Court judge issued an emergency order finding that there was reasonable cause to believe that L.S. was in need of protective services. The judge directed that L.S. not be returned to the care of her daughter and that her health care proxy be temporarily revoked pending further court order. A few days later, the judge appointed a GAL to investigate and report to the court whether L.S. was suffering from elder abuse and whether she lacked the capacity to consent to the provision of protective services.

Meanwhile, on April 16, 2021, UMass Memorial Healthcare, Inc. (UMass Memorial), filed the underlying petition for appointment of a guardian for L.S. (guardianship petition). UMass Memorial filed the guardianship petition after L.S. presented at the emergency room on April 11, 2021 -- less than forty-eight hours after she had been discharged home with her daughter -- reporting that her daughter had thrown her out of the home. The same judge who acted on the elder-abuse petition appointed a temporary guardian for L.S. The judge also appointed counsel, who filed an objection on behalf of L.S. alleging that she was not an incapacitated person and that her health care proxy was valid. UMass Memorial later withdrew from the guardianship matter, and ESWA intervened.

At trial ESWA called one witness, Eleni Klostri, a psychiatric mental health nurse practitioner qualified as an expert in her field, who had examined L.S. five times in the months leading up to trial. L.S. also called one witness, the GAL appointed in connection with the elder-abuse petition. The GAL's report, completed in December 2021, was admitted in evidence over L.S.'s objection.

Following the trial, and based primarily on Klostri's testimony, the judge found that L.S. was an incapacitated person within the meaning of G. L. c. 190B, § 5-101. As a result the judge entered a decree of appointment of a guardian, granting

3

the guardian all powers authorized by G. L. c. 190B, Article V, Part III.  The decree also specifically authorized the guardian to admit L.S. to a nursing facility and to revoke her health care proxy.

Discussion.  1.  Admission of GAL report.  L.S.'s first argument on appeal is that the judge erred by admitting the GAL report in evidence because there is no statute specifically authorizing the admission of GAL reports in adult guardianship proceedings.  We conclude that this argument is waived because L.S. did not timely raise it to the judge.  At the pretrial conference on December 13, 2021, the judge stated that the GAL report would be admitted in evidence and that L.S.'s attorney should subpoena the GAL if he wished to cross-examine him.  L.S.'s attorney did not object.  The judge then issued a pretrial order, which stated that the GAL report "shall be an evidentiary [e]xhibit at [t]rial" and, if either party objected to the admission of any part of the report, a motion in limine or to strike had to be filed in time to be heard at least ten days prior to trial.  Almost four months later on April 11, 2022, exactly ten days prior to the scheduled trial date, L.S. filed a motion in limine to exclude the GAL report.  After a hearing on April 13, 2022, the judge denied the motion as untimely, observing that L.S.'s attorney "had four months to get [it] done" and that he failed to comply with "a very specific

4

trial order." This ruling was within the judge's wide discretion to manage his docket and the conduct of the proceeding. See State Realty Co. of Boston, Inc. v. MacNeil Bros. Co., 358 Mass. 374, 379 (1970).

In any event, even assuming no waiver, L.S. has failed to show that the judge abused his discretion in admitting the GAL's report. As we held in Guardianship of Pollard, 54 Mass. App. Ct. 318, 323 (2002), an adult guardianship case, "[a] GAL's report is ordinarily admissible and its use at trial should be anticipated." See also Sarkisian v. Benjamin, 62 Mass. App. Ct. 741, 745 (2005) ("guardian ad litem acts as an arm of the court and is an integral part of the judicial process"). GAL reports are admissible even if they contain hearsay material, so long as the GAL is "available to testify at trial and . . . the source of the material [is] sufficiently identified so that the affected party has an opportunity to rebut any adverse or erroneous material contained" in the report. Guardianship of Pollard, supra at 323-324, quoting Adoption of Georgia, 433 Mass. 62, 69 (2000). Here, the GAL was available to testify and did in fact testify at trial, and L.S. raises no claim that the source of any hearsay material in his report was unclear. The judge was therefore within his discretion to admit the report. See Guardianship of Pollard, supra at 324 (no abuse of discretion in denying motion to strike GAL's report).

5

2.  Sufficiency of evidence.  L.S. next contends that the evidence was insufficient to show that she was an incapacitated person under G. L. c. 190B, § 5-101 (9).[1]  Our review of the judge's ruling is not de novo, as L.S. suggests, but for abuse of discretion or other error of law.  See Guardianship of C.A., 102 Mass. App. Ct. 392, 395 (2023).  Under this standard "[t]he question is not whether we would have found as did the [judge], but whether on the entire evidence we are left with the definite and firm conviction that a mistake has been committed." Guardianship of Jackson, 61 Mass. App. Ct. 768, 774 (2004).  It was ESWA's burden at trial to prove by a preponderance of the evidence that L.S. was an incapacitated person.  See Guardianship of C.A., supra.

The judge properly concluded that ESWA met its burden. Based on Klostri's testimony, the judge found that L.S. had moderate to severe cognitive impairment and "deficits in all areas of medical and emotional functioning," which put her "at risk physically and emotionally."  She was unable to name her medications, identify the appropriate doses of her insulin, meet

---

[1] That statute defines "incapacitated person" as "an individual who for reasons other than advanced age or minority, has a clinically diagnosed condition that results in an inability to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance."  G. L. c. 190B, § 5-101 (9).

the requirements for her self-care, or use coping safety strategies when emotionally deregulated.  Even while under supervision, L.S. unintentionally harmed herself with nail clippers.  The judge specifically credited Klostri's opinion that, because of these deficits, L.S. required twenty-four hour supervision and did not have the capacity to make decisions to protect her health, safety, and welfare.  We defer to the judge's assessment of the credibility of the witnesses, and we see nothing in the record to indicate that his decision was against the weight of the evidence.  See Guardianship of Jackson, 61 Mass. App. Ct. at 774.

We are unpersuaded by L.S.'s argument that the judge failed to give sufficient consideration to evidence that L.S. was willing to remain in the nursing facility, accepted the care provided to her by the staff, and was able to make medical decisions in that structured environment.  This evidence does not detract from the judge's finding that L.S. needed twenty-four hour supervision and did not have the capacity to make medical decisions on her own.  At bottom L.S.'s challenge amounts to a disagreement with how the judge weighed the evidence, a matter that is entrusted to his discretion.  See Guardianship of Jackson, 61 Mass. App. Ct. at 774.

3.  Health care proxy.  Lastly, L.S. argues that the judge erred by empowering the guardian to revoke L.S.'s health care

7

proxy.  To the extent L.S. claims that a health care proxy can only be revoked through a special proceeding under G. L. c. 201D, § 17,[2] we disagree.  In Guardianship of Mason, 41 Mass. App. Ct. 298, 304 (1996), we held that a judge may treat a complaint for appointment of a guardian "as also seeking an override" of a health care proxy.  Thus, a dispute regarding a health care proxy may be resolved in a guardianship proceeding, regardless of whether a separate complaint was filed under G. L. c. 201D, § 17.

We also disagree with L.S.'s contention that the evidence did not support the judge's decision to override the health care proxy.  Under G. L. c. 201D, § 17 (ii), an agent may be "removed on the ground that the agent is not reasonably available, willing and competent to fulfill his or her obligations under this chapter or is acting in bad faith."  The agent's obligations include the duty to make health care decisions "based upon a true assessment of [the principal's] best interests."  Guardianship of Mason, 41 Mass. App. Ct. at 305. See G. L. c. 201D, § 5.

---

[2] That statute authorizes a health care provider, conservator, guardian, family member, or close friend of the principal or the commissioner of public health to commence a special proceeding to determine the validity of the principal's health care proxy, to remove an agent, or to override an agent's decision about health care treatment.  See G. L. c. 201D, § 17.

The evidence here was sufficient to show that L.S.'s daughter did not make decisions in accordance with L.S.'s best interests. As detailed in the GAL's report, L.S. was chronically homeless, despite the daughter's assurances to hospital staff that she would care for her mother at home and monitor her closely. Between March 2020 and April 2021, L.S. presented at the emergency room fifty-seven times, sometimes reporting that her daughter had thrown her out of the home. Also, on multiple occasions, the daughter was seen dropping L.S. off at the homeless shelter, despite knowing that L.S. was barred from the shelter and that it could not meet her medical needs.

Based on the information uncovered in his investigation, the GAL concluded that the daughter had abused L.S. by "fail[ing] to take action to protect her . . . and ensure that her needs were met." The judge implicitly credited the GAL's conclusion, which was sufficient to justify overriding the health care proxy. While it would have been better had the judge made more express findings regarding the proxy, the GAL's report provided ample basis for the judge to authorize someone other than the daughter to make health care decisions on L.S.'s behalf. Faced with a similar situation in Guardianship of Mason, 41 Mass. App. Ct. at 304-305, we concluded that it was proper for the judge to override a health care proxy and appoint

9

a temporary guardian, where the GAL reported that the agent (the principal's son) was "unable to objectively separate his mother's needs from his own and/or to prioritize her needs" and had demonstrated a poor ability to work with her providers. Likewise here, the GAL's report established that the daughter "had not made and would not make decisions in accordance with the standards set out in G. L. c. 201D, § 5." Id. at 305. The judge was thus warranted in empowering the guardian to revoke the health care proxy.

Decree affirmed.

By the Court (Shin, Brennan & Hodgens, JJ.[3]),

Joseph F. Stanton

Clerk

Entered: December 1, 2023.

---

[3] The panelists are listed in order of seniority.

10